UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVID COLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 15-01991 (EGS) (GMH) |
| | ) | |
| WALTER G. COPAN, in his official | ) | |
| capacity as Director of the National | ) | |
| Institute of Standards and Technology, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## RENEWED MOTION FOR SUMMARY JUDGMENT

Defendants, by and through undersigned counsel, respectfully move pursuant to Federal Rule of Civil Procedure 56 for summary judgment on all counts of Plaintiff's Complaint (ECF No. 1). This motion is accompanied by a memorandum of law, statement of undisputed material facts, exhibits, and a proposed order.

Dated: July 29, 2022                Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

  */s/ Sean Tepe*
SEAN M. TEPE, DC Bar #1001323
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
Telephone: (202) 252-2533
Sean.Tepe@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVID COLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 15-01991 (EGS) (GMH) |
| | ) | |
| WALTER G. COPAN, in his official | ) | |
| capacity as Director of the National | ) | |
| Institute of Standards and Technology, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF
## RENEWED MOTION FOR SUMMARY JUDGMENT

Defendants, National Institute of Standards and Technology ("NIST") and Federal

Emergency Management Agency ("FEMA"), by and through undersigned counsel, renew their

motion for summary judgment in this case brought pursuant to the Freedom of Information Act

("FOIA").

This Court granted Plaintiff the opportunity to take limited discovery regarding the

adequacy of Defendants' searches because the Court considered Defendants' previous declarations

to be insufficient in demonstrating that they conducted reasonably adequate searches for agency

records responsive to Plaintiff David Cole's FOIA request.  Plaintiff has taken that discovery, and

it confirms that both FEMA and NIST complied with their obligations under the FOIA.

## BACKGROUND

### A.    Procedural Background

Defendants previously moved for summary judgment (ECF No. 23) on the two FOIA

claims in the Complaint (ECF No. 1).  After completion of briefing on that motion, District Judge

Emmet G. Sullivan referred this case to Magistrate Judge G. Michael Harvey (ECF No. 36), who

issued a Report and Recommendation (ECF No. 37) that recommended Defendants' motion be denied.  As a general matter, this Court found that "Defendants [had] not shown that their searches were adequate due to their failure to provide this Court with sufficient details about their methodologies."  Rep. & Rec. at 11.  After both Defendants and Plaintiff raised objections to the Report and Recommendation (ECF Nos. 43 and 44, respectively), Judge Sullivan adopted in part and rejected in part the Report and Recommendation ("Mem. Op."; ECF No. 48).  Further, the Court "authorized discovery limited to the adequacy of the Defendants' searches, excluding the question of whether responsive records were stored in the Region II warehouses."  Mem. Op. at 41.  The precise contours of discovery were established (ECF No. 52), discovery has been completed, and pursuant to the schedule set by this Court (ECF No. 55), Defendants hereby renew their motion for summary judgment.

### B.    Cole's FOIA Request and the Building Performance Study

On May 21, 2011, Cole requested under the FOIA from FEMA "background or raw data used for the FEMA 403 Building Performance Study ["BPS"], concerning the World Trade Center[,]" including "photos, videos, audio, field notes, memorandums, and laboratory samples, etc."  Statement of Material Undisputed Facts ("SOF") ¶ 1.

It is important to recognize that the BPS report was not drafted or prepared by either FEMA or NIST.  The BPS was "produced by Greenhorne & O'Mara, Inc. (G&O) under Contract EMW-99-CO-0267 to the Federal Insurance and Mitigation Administration of FEMA."  SOF  ¶ 2.  And while Greenhorne & O'Mara ("G&O") was the prime contractor responsible for preparing the BPS, the content of the BPS was the product of a "team" of individuals outside of FEMA and the federal government, as made clear by the report's list of authors and team members.  SOF ¶ 3.  And the "background or raw data" were the materials used by these individuals to support their

contributions to the BPS.  At some point, G&O collected as much of the background data as it could from BPS team members.  SOF ¶ 4.

In 2002, all of the BPS background data that had been collected by G&O were transferred to NIST on behalf of FEMA.  SOF ¶¶ 5-6, 8.  On May 29, 2002, the BPS background data were physically transferred in three or four boxes by G&O to NIST on behalf of FEMA during an in-person meeting.  SOF ¶ 6.  The transferred data included photos and video (stored on discs and VHS tapes) and large-format architectural drawings, among other records.  The contents of the BPS background data transferred in May 2002 by G&O to NIST appears on an inventory drafted by Terri McAllister, dated June 11, 2002.  SOF ¶ 7.  McAllister was an employee of G&O who had worked on the BPS, Defendant Exhibit ("DEX") 4, after which she joined NIST.

### C.     FEMA'S Search

Upon accepting Cole's FOIA Request on May 21, 2002, FEMA's Disclosure Branch tasked searches to FEMA's Region II, the Office of External Affairs, and the Federal Insurance and Mitigation Administration ("Mitigation") because they were possible locations reasonably likely to possess records responsive to Cole's FOIA request.  SOF ¶ 11.  Specifically, the FEMA Disclosure Branch directed these initial search taskers to the FOIA Point of Contact for these program offices and regions.  Each FEMA program office and region has its own FOIA Point of Contact "who is a subject matter expert or SME in the location of files in their program or region."  SOF ¶ 9.  They often consult with other record custodians and subject matter experts within the program or region.  SOF ¶ 10.  And this is the process FEMA employed with respect to Cole's FOIA request.

A search was tasked to External Affairs because "it maintained [World Trade Center] photos on a public FEMA website, which were related to previous FOIA requests of Plaintiff, and to determine if External Affairs had any involvement with the BPS."  SOF ¶ 13.  Although External

Affairs maintained publicly available World Trade Center photos online, it was not involved in the BPS, and therefore, the FOIA Contact for External Affairs reported that it did not possess responsive materials.  SOF ¶¶ 13-14.

A search was also tasked to Region II, which is the FEMA regional office covering New York.  SOF ¶ 15.  It was the standard practice of the Disclosure Branch to task a search to the regional office encompassing the geographic area where the incident at issue in the request occurred.  SOF ¶ 17.  The Region II FOIA Point of Contact responded that Region II did not possess responsive records.  SOF ¶ 18.  This response was consistent with a response to an earlier FOIA request for records related to the investigation of the World Trade Center collapse.  For that FOIA request, the Region II FOIA Contact wrote that Region II "ha[s] no records regarding the investigation into the World Trade Center event."  SOF ¶ 19.

The third office tasked with a search was the Federal Insurance and Mitigation Administration, because the BPS report indicated that it concerned disaster mitigation.  SOF ¶¶ 20-21.  Paul Tertell, who was the FEMA Project Officer for the BPS, was a member of FEMA's Mitigation Branch.  SOF ¶ 23.  On December 19, 2011, Kathryn Hinkley, a Mitigation Program FOIA Point of Contact, informed the Disclosure Branch that "all" information responsive to Plaintiff's FOIA request "was sent to NIST about 8 years ago."  SOF ¶ 22.  Tertell was consulted as part of Mitigation's determination that "all" records responsive to Cole's request had been transferred to NIST.  SOF ¶¶ 24-25.

### D.    NIST's Search

On December 23, 2011, Catherine Fletcher, the NIST FOIA Officer, received FEMA's referral of Cole's BPS FOIA request and designated it FOIA #12-057.  SOF ¶¶ 26-27.  On December 28, 2011, NIST FOIA Analyst Darla Yonder tasked the request to NIST's Engineering Laboratory.  SOF ¶ 28.  The Engineering Laboratory was the division of NIST responsible for

studying building collapses under the National Construction Safety Team Act ("NCSTA") and charged with conducting its own investigation in the World Trade Center collapse, and accordingly the division that received materials related to the building collapses at the World Trade Center.[1] *Id*. Based on its experience with other FOIA requests relating to the collapse of the World Trade Center, its consultation with subject matter experts, and the Engineering Laboratory's involvement in NIST's own study of the World Trade Center collapse, the NIST FOIA office tasked the request to the Engineering Laboratory as the office most likely to possess the requested records. SOF ¶ 29. At the time of Cole's request, the Engineering Laboratory maintained a database of all materials received as part of its investigation into the failure of the World Trade Center buildings, including the BPS records transferred on FEMA's behalf by G&O in 2002. SOF ¶ 30. Every record received was entered into the database and assigned a tracking number. SOF ¶ 31.

Dr. William Grosshandler, the Deputy Director of the Engineering Laboratory, consulted with subject matter experts John Gross, Eric Letvin, and Therese McAllister regarding the referred FOIA request. SOF ¶ 32. Letvin and McAllister provided NIST with background information about the records sought in Cole's request based on their previous employment with Greenhorne & O'Mara and their work on the BPS. SOF ¶ 33. In an email, Letvin confirmed that Cole's FOIA request seeks the "data given to NIST by FEMA" in 2002 that had been collected by G&O as the background data for the BPS. SOF ¶ 34. McAllister agreed that Letvin "provide[d] a good summary" of the BPS records that were "transferred to NIST" being sought by Cole. SOF ¶ 35.

NIST had an inventory, prepared by McAllister and dated June 11, 2002, of all records that had been "delivered to NIST from G&O, on behalf of FEMA[.]" SOF ¶ 36. Therefore, NIST set

---

[1]     In 2002, when BPS background data were transferred on behalf of FEMA to NIST, the Engineering Laboratory was called the Building and Fire Research Laboratory.

out to search for those records in its database of World Trade Center records.  Kellie Beall, a NIST

Information Specialist, conducted the search guided by McAllister's June 11, 2002, inventory.

SOF ¶ 37.  Beall explained in the NIST deposition how she searched for the records listed on the

McAllister inventory within "the WTC database" using the available fields in the database (such

as "title," "received from," "owner," "document type," etc.) until Beall was "able to find something

that [she] believed matched the item [she] was looking for."  SOF ¶ 38.   This was an iterative

process where she "started by typing in the exact item."  DEX 3 (Beall Tr. at 45:2-18).  Although

sometimes she would "get lucky" and the item "would show up" "by typing in the exact item word-

for word[,]" other times she would "start picking and choosing other words" until she "finally

exhausted any ideas of how else to search."  *Id*.  Beall also recalled conferring with Terri

McAllister in her search.  *Id*. (Beall Tr. at 42:19-43:2).  The WTC database identified where the

item was being stored, and Beall retrieved and reviewed the item "to further confirm whether or

not [she] believed that was the item in question."  *Id*. (Beall Tr. at 15:9-15); SOF ¶ 39.  On the

inventory, Beall placed a check mark next to every item that she located and noted the NIST file

name associated with that item.  SOF ¶ 40.  As shown on Beall's marked up copy of the McAllister

inventory, she found all but two items ("WTC Tenant Lists" and "Draft WTC Building Survey

Report by Guy Nordensen Associates").  SOF ¶ 41.  Beall then burned the located records to CDs

or DVDs and personally delivered the records to the FOIA Office.  SOF ¶ 42.  Those records were

produced to Plaintiff either directly by NIST or eventually by FEMA.  SOF ¶ 44; ECF 23-4.

## ARGUMENT

The remaining issue in this case concerns whether the respective searches by FEMA and

NIST were adequate.  To prevail at summary judgment on the issue of whether a FOIA search was

adequate, an agency need only show that it "made a good faith effort to conduct a search for the

requested records, using methods which can be reasonably expected to produce the information

requested." *Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017)

(quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  Importantly, "[t]here is no

requirement that an agency search every record system" for its search to be deemed adequate.

*Oglesby*, 920 F.2d at 68.  Likewise, "the adequacy of a search is 'determined not by the fruits of

the search, but by the appropriateness of [its] methods.'"  *Hodge v. FBI*, 703 F.3d 575, 580 (D.C.

Cir. 2013) (quoting *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)).

And while the Court previously found that Defendants had not provided "sufficient details"

regarding the methods used in their searches, those details were explored in discovery and the

undisputed record demonstrates that FEMA and NIST employed methods which can be reasonably

expected to produce the information requested.

## I.    FEMA CONDUCTED A REASONABLY ADEQUATE SEARCH FOR THE REQUESTED RECORDS

FEMA's search was adequate because it "made a good faith effort to conduct a search for

the requested records, using methods which can be reasonably expected to produce the information

requested." *Reporters Comm.*, 877 F.3d at 402.  The record demonstrates that FEMA, at the outset,

worked to identify any locations reasonably likely to maintain the requested records.  FEMA did

this by tasking searches to three offices based on the Disclosure Branch's understanding of the

FOIA request, its experience with similar FOIA requests, and its standard practices.  SOF ¶¶ 9-26.

Through those search taskings, the Disclosure Branch consulted with FOIA Points of Contact for

each office, who are the subject matter experts regarding the types of records in their offices.  SOF

¶¶ 12, 24, 15, 18-20, 22.  Such efforts to ascertains locations that could reasonably be expected to

produce responsive information is a standard, accepted methodology.  *See, e.g., Am. Oversight v.

Dep't of Just.*, 401 F. Supp. 3d 16, 30 (D.D.C. 2019) ("[T]he agency is in the best position to

determine custodians most likely to have relevant records.") (citations and quotations omitted);

*Elec. Priv. Info. Ctr. v. FBI*, Civ. A. No. 17-0121 (TNM), 2018 WL 2324084, at *3 (D.D.C. May 22, 2018) (deeming search adequate where, based on consultation with subject matter experts, agency searched location in which responsive records stored); *Porter v. CIA.*, 778 F. Supp. 2d 60, 64 (D.D.C. 2011) (noting how CIA sought to "determine which systems are likely to possess records responsive to a particular request" give its "record systems are decentralized and compartmentalized"); *Brehm v. Dep't of Def.*, 593 F. Supp. 2d 49, 50 (D.D.C. 2009) (finding search was adequate where agency searched two systems likely to have responsive records and also declared other systems were unlikely to have responsive records).

As a result of FEMA's search and consultation process, FEMA learned that the BPS records requested by Cole were not in the possession of the agency.  SOF ¶¶ 22, 24-25.  That should not come as a surprise because Cole explicitly requested the background data to a report that was not drafted by FEMA.  Cole requested the background data for a report that was produced by a third-party, Greenhorne & O'Mara, and that drew upon the contributions of many other individuals not employed by FEMA or by G&O.  SOF ¶¶ 3-4.  FEMA consulted with Paul Tertell in Mitigation, who was FEMA's Project Officer for the BPS and FEMA's primary subject matter expert on the BPS.  SOF ¶¶ 24-25.  Mitigation informed the Disclosure Branch that the records requested by Cole were in the possession of NIST, not FEMA.  SOF ¶ 22.  The accuracy of Mitigation's response was confirmed when NIST located those records.  In short, FEMA's search was adequate because it employed a reasonable method for ascertaining locations where responsive records would likely be stored, and indeed that search correctly identified the location of the records—NIST.

Cole may argue that FEMA nonetheless should have searched the hard copy and electronic files of FEMA personnel in the off chance that background data for a report not drafted by FEMA

might have appeared in an email or on a server,[2] but an agency "is only required to search those places where a document is likely to be." *Jud. Watch, Inc. v. HUD*, 20 F. Supp. 3d 247, 254 (D.D.C. 2014) (citing *Oglesby*, 920 F.2d at 68; *Weisberg*, 745 F.2d at 1485). And FEMA made the determination that the requested records were not "likely to be" at FEMA because they had been transferred by G&O, on FEMA's behalf, to NIST, a determination that was proven to be correct. FEMA relied on consultations with subject matter experts—experts regarding the types of records located in the three tasked FEMA offices (*e.g.*, FOIA Points of Contact) and the BPS that was the subject of the FOIA request (*e.g.*, Mitigation Branch and Tertell)—in making that determination, which is a reasonable and adequate method for conducting a search. *See id.* at 254-55 ("[I]t is permissible for an agency to rely on subject matter experts to conduct individualized searches for documents when responding to FOIA requests."); *Elec. Priv. Info. Ctr.*, 2018 WL 2324084, at *3 (finding it was permissible for the FBI to rely "on consultation with subject-matter experts" in determining "where the FBI would store responsive records").

The evidence establishes that FEMA did not retain for itself a copy of the background data that was collected by G&O and then transferred by G&O to NIST on FEMA's behalf. SOF ¶¶ 6, 24-25 . Discovery includes the testimony of Eric Letvin, who worked for G&O in 2002 to collect the background data Cole seeks and who physically transferred those materials to NIST, not FEMA, in 2002. He testified: "I remember being in a conference room and we literally, Paul Tertell and I, pushed the boxes across the table, and NIST took physical possession of those boxes. When I left the NIST campus that day, I did not have any materials on me, nor did Mr. Tertell." DEX 1 (FEMA Tr. at 140:12-19). And because FEMA never retained possession of a copy of the

---

[2]   This is not only highly speculative; it is highly improbable. The background data included large-format architectural drawings and VHS tapes—not the type of material that could be attached to an email residing in an email inbox.

background data, but instead only facilitated its transfer to NIST, further searches of FEMA are not required. An agency "need not search files or record systems that are not '*likely* to contain responsive materials.'" *Cause of Action Inst. v. IRS*, 316 F. Supp. 3d 99, 110 (D.D.C. 2018) (quoting, with emphasis added, *Oglesby*, 920 F.2d at 68).

Cole may also argue, as he has done previously, that FEMA should be forced to search FEMA World Trade Center records stored at the National Archives and Records Administration ("NARA"). This argument is based on pulling a single sentence of a letter from FEMA out of context. In that letter, the FEMA Records Management Division Director mentioned that there are "approximately 490,000 pages of boxed WTC records in storage at NARA" which may interest Cole but clarified that these "records originated within FEMA's Region II Office," unlike the BPS records sought by Cole. Declaration of Eric Neuschaefer, Ex. 12-242F at 2 (ECF No. 23-2). Cole has not asked for "WTC records" generally; he has requested "background or raw data" for a report that was prepared by a third-party contractor. And Plaintiff's discovery failed to uncover any evidence that BPS background data was transferred to NARA. Again, the evidence establishes that the records requested by Cole were collected by third-party G&O and transferred directly to NIST on behalf of FEMA in 2002. And because FEMA was not provided a copy of the background data collected by G&O, FEMA could not have transferred the background data to NARA. In other words, FEMA could not send to NARA records it did not have. There is simply no evidence that establishes NARA as a reasonably likely location for the "background or raw data" supporting the third-party produced BPS.

The evidence shows that, upon receiving Cole's FOIA request, FEMA undertook a systematic effort, consistent with its normal practices, to identify locations reasonably likely to possess the records. That search effort, relying on subject matter experts, correctly identified the

likely location of responsive records—NIST.  The adequacy of FEMA's efforts is further confirmed by the fact that NIST located an inventory of the BPS "background or raw data" records transferred on FEMA's behalf by G&O to NIST, conducted a meticulous search for those records within NIST's databases and records storage, and successfully collected almost every transferred record.  FEMA's motion for summary judgment accordingly should be granted.

## II.   NIST CONDUCTED A REASONABLY ADEQUATE SEARCH FOR THE REQUESTED RECORDS

The record also establishes that NIST conducted a reasonably adequate search for Cole's requested records.

This Court already found that NIST had "sufficiently explained why it chose to assign the search to the Engineering Laboratory."  Rep. & Rec. at 15 n.8.  Discovery has confirmed the correctness of that finding.  Based on its experience with other FOIA requests relating to the collapse of the World Trade Center, its consultation with subject matter experts, and the Laboratory's involvement in NIST's own study of the World Trade Center collapse, the NIST FOIA office tasked the request to the Engineering Laboratory as the office most likely to possess the requested records.  SOF ¶ 29.  The Engineering Laboratory maintains a database of "all materials received as part of its investigation into the failure of the World Trade Center buildings," which includes the BPS records transferred on FEMA's behalf by G&O in 2002.  SOF ¶ 30.

Previously, however, the Court found that NIST had not sufficiently described its "methodology" or "*how* the records were searched" within the Engineering Laboratory.   Rep. & Rec. at 15; Mem. Op. at 29-30.  Now, Plaintiff has taken the deposition of Kellie Beall, the Information Specialist who conducted the actual search.  Beall described each step of the process, beginning with being tasked by the Deputy Director of the Engineering Laboratory to "work with Terri McAllister . . . to collect all of the responsive materials."  DEX 3 (Beall Tr. at 9:5-10:5).

Beall explained that McAllister "provided [her] with a list of items that would be responsive to the request" (the June 11, 2002 inventory) and that it was up to her to use the databases and other resources in the office to locate and collect the items. *Id*. (Beall Tr. at 10:6-11:1).  Beall explained how she used the information on the inventory and the available fields in the database to conduct numerous search queries that allowed her to locate a record listed on the inventory, at which point Beall would retrieve the record and compare it to the inventory's description to confirm a "match[]." *Id*. (Beall Tr. at 9:17-18:22).  In other words, the searches were not conducted using a pre-defined set of search terms, but rather were conducted methodically and rigorously by an information professional using the inventory that listed BPS background data collected by G&O and transferred on FEMA's behalf to NIST, the fields in the database, and consultations with subject matter expert McAllister as necessary, to locate successfully almost every listed item. Thus, NIST has "explained how the list[] guided [its] search, and what [its] methodology was when searching[.]"  Mem. Op. at 29-30.

Cole may argue that NIST should not have based its search on materials listed on the McAllister inventory.  But the FOIA request sought "background or raw data used for the FEMA 403 Building Performance Study" and the inventory was the index available to NIST which allowed it to determine which records in its storage were "background or raw data" for the BPS. Again, the BPS and its background data were not generated by NIST, and without the inventory NIST would have had no way of identifying what was BPS "background or raw data."  Further, NIST consulted two subject matter experts, Letvin and McAllister, on the BPS, the collection of the background data for the BPS, and the transfer of those materials to NIST.  Letvin confirmed that Cole's FOIA request "only applies to data given to NIST by FEMA" in 2002, and the McAllister inventory was a comprehensive index of those transferred materials.  DEX 6 (COLE-

15CV1991-NIST-0008).   The adequacy of an agency's search is measured by a "standard of reasonableness," and is "dependent upon the circumstances of the case."   *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (quoting *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).  NIST's search was reasonable under the circumstances of this case.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court grant summary judgment in Defendants' favor.[3]

Dated: July 29, 2022                          Respectfully submitted,

                                              MATTHEW M. GRAVES, D.C. Bar No. 481052
                                              United States Attorney

                                              BRIAN P. HUDAK
                                              Chief, Civil Division

                                               */s/ Sean Tepe*
                                              SEAN M. TEPE, DC Bar #1001323
                                              Assistant United States Attorney
                                              601 D Street, NW
                                              Washington, DC 20530
                                              Telephone: (202) 252-2533
                                              Sean.Tepe@usdoj.gov

                                              *Counsel for Defendants*

---

[3]     Defendants are not aware of there being a challenge to Defendants' limited holdings under 5 U.S.C. § 552(b)(6) or their compliance with segregability obligations.  Defendants rely on previous briefing on those issues as necessary.  Mot. for Summ. J. Mem. (ECF No. 23) at 7-10.