UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID COLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 15-1991 (EGS/GMH) |
| ) | |
| LAURIE E. LOCASCIO, in her official ) | |
| capacity as Director of the National ) | |
| Institute of Standards and Technology, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**COMBINED REPLY IN SUPPORT OF
DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendants, National Institute of Standards and Technology ("NIST") and Federal Emergency Management Agency ("FEMA"), by and through undersigned counsel, respectfully submit this combined reply in support of their renewed motion for summary judgment ("Motion"; ECF No. 56) and in opposition to Plaintiff's cross-motion for summary judgment (ECF Nos. 61, 62).[1]

As the Court is aware, it denied Defendants' previous motion for summary judgment because "Defendants [had] not shown that their searches were adequate due to their failure to provide this Court with sufficient details about their methodologies." Mot. at 2 (quoting Rep. & Rec. at 11 (ECF No. 37)). Defendants respectfully submit that the Court now has sufficient details about the search methods employed and that those details demonstrate that FEMA and NIST

---

[1] Unless otherwise noted, all citations to Plaintiff's submissions are to Plaintiff's Amended Combined Memorandum in Support of Plaintiff's Cross Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment ("Opposition"; ECF No. 62-2).

complied with their obligations under FOIA. The discovery record confirms that both FEMA and NIST engaged in search efforts that were reasonably adequate and successfully led to the location of records responsive to Plaintiff's May 21, 2011 FOIA request for "background or raw data used" in the Building Performance Study ("BPS") drafted by a third party roughly a decade earlier. Thus, Plaintiff's Opposition relies on vague contentions of missing documents and speculations about their existence, suggestions that agencies must disbelieve subject matter experts and conduct searches in locations not deemed to be likely locations of responsive materials, and efforts to broaden the scope of his specific FOIA request and of the relief he seeks from this Court. As discussed below, Plaintiff's arguments are without legal foundation in the D.C. Circuit's FOIA jurisprudence. Therefore, Defendants respectfully request that the Court grant their renewed motion for summary judgment and deny Plaintiff's renewed cross-motion for summary judgment.

### I.  PLAINTIFF'S CROSS-MOTION SHOULD BE DENIED.

Plaintiff cross-moves for summary judgment on the adequacy of Defendants' searches in response to Plaintiff's May 21, 2011, FOIA request to FEMA. *See* Opp. at 6-15. Plaintiff argues that Defendants' efforts in responding to his FOIA were insufficient in various ways, but notably Plaintiff's argument fails to cite supportive legal authority demonstrating that Defendants' search efforts were insufficient under the governing FOIA legal standards. *See id.* In any event, Plaintiff's arguments regarding the adequacy of Defendants' searches are the same ones used to oppose Defendants' summary judgment motion and are addressed in detail below.

Plaintiff also argues that he should be granted summary judgment on his FOIA claim because the production of some responsive documents was delayed for three to four years. Opp. at 16-17. Plaintiff cites no authority in support. In fact, courts have recognized that a plaintiff "cannot rest on the mere fact of delay alone to establish a claim." *Am. Ctr. for L. & Just. v. Dep't of State*, 249 F. Supp. 3d 275, 283 (D.D.C. 2017) (citing cases); *Campbell v. Dep't of Just.*, 133 F.

Supp. 3d 58, 65 (D.D.C. 2015) (delay "is without legal consequence" other than the "agency may not raise an exhaustion defense to suit").

Finally, Plaintiff contends he should be granted summary judgment because there is an unsolved "mystery" regarding how "records documented as having been located by [NIST's] Ms. Beall . . . have not found its way to Plaintiff." *Id*. at 17. This argument does not relate to whether either agency's searches were adequate, which is the issue before the Court in this renewed motion practice. But even if this was the relevant issue before the Court, Plaintiff does not identify specifically what he contends, as of today, was not produced. Rather, Plaintiff relies on vague representations that he has previously noted records "as missing" from Defendants' productions. *Id*. In any event, without such detail the Court cannot conclude that Plaintiff's motion raises a genuine issue of material fact when viewed in the light most favorable to Defendants, thus precluding summary judgment in Plaintiff's favor.[2] *Steinberg v. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994).

## II. DEFENDANTS' MOTION SHOULD BE GRANTED BECAUSE FEMA CONDUCTED A REASONABLY ADEQUATE SEARCH FOR THE REQUESTED RECORDS

The record evidence after discovery establishes that FEMA "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d 399,

---

[2]  And where there is some level of specificity in his assertions, there is reason to question Plaintiff's contentions. For example, Plaintiff causally asserts that "FTP site backup records have yet to be produced to Cole." Opp. at 24. That is not accurate. The FTP backup files listed on the McAllister inventory were identified by NIST as residing at WTCI-63-FEMA in NIST's files. Second Declaration of Catherine S. Fletcher ("Second Fletcher Decl.") ¶ 19; DEX 23 at 2. On February 7, 2012, NIST made its first interim production to Plaintiff in response to the referred FOIA request from FEMA. *Id*. ¶ 20. As shown by a list of the files produced, 1,215 files from WTCI-63 or the FTP backup was produced to Plaintiff. *Id*., Ex. G (see pages 17-39).

402 (D.C. Cir. 2017) (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). Specifically, the evidence shows that FEMA's Disclosure Branch tasked searches to three program or regional offices that were identified as possible locations reasonably likely to possess records responsive to Cole's FOIA request. SOF ¶ 11. Discovery shows that the Disclosure Branch consulted with and relied on subject matter experts in each of these program or regional offices to inform whether that office was likely to possess responsive records. *See* Mot. at 3-4; SOF ¶¶ 9-25. Discovery further confirms that the Disclosure Branch consulted with the FEMA office (Mitigation) and FEMA personnel (Paul Tertell) most knowledgeable about the FEMA-commissioned, but third-party drafted, Building Performance Study. SOF ¶¶ 21-25. Although Plaintiff argues that FEMA should have done more, Plaintiff does not deny FEMA's efforts to determine if there is a location at FEMA that was reasonably likely to possess responsive records. *See* Pl.'s Counter-Statement of Facts (ECF No. 62-5). Nor does Plaintiff dispute that courts regularly find it is reasonable for an agency to rely "on consultation with subject-matter experts" in determining where responsive records would be located. Mot. at 9.

FEMA's efforts led it to the reasonable conclusion that the requested records were not in the possession of FEMA but were in the possession of NIST. The Chief of the Building Science Branch, Risk Reduction Division of the Mitigation Directorate informed the FEMA Disclosure Branch, with FEMA's BPS Project Officer Paul Tertell copied, that "all that info was sent to NIST about 8 years ago." SOF ¶ 22; DEX 18. Plaintiff effectively concedes that FEMA was correct in its determination that the records he requested had been transferred to NIST in 2002. Opp. at 22 ("A copy of most of those records may well have been given to NIST[.]").

Unable to challenge the reasonableness of what FEMA did do, which led to the concededly correct identification of NIST as possessing the records Plaintiff sought from FEMA, Plaintiff

instead argues that FEMA should have conducted additional searches through the "computer, email, and hard copy records of FEMA's BPS personnel," Opp. at 22, to confirm what the subject matter experts were saying was true—that FEMA did not otherwise possess the background data sought by Plaintiff's FOIA. But Plaintiff cites no legal authority that an agency is obligated to effectively disbelieve its subject matter experts and conduct confirmatory searches in locations that were not determined to be likely sources of responsive materials. Indeed, courts hold that an agency "need not search files or record systems that are not '*likely* to contain responsive materials.'" *Cause of Action Inst. v. IRS*, 316 F. Supp. 3d 99, 110 (D.D.C. 2018) (quoting, with emphasis added, *Oglesby*, 920 F.2d at 68). It is well-settled that "[t]here is no requirement that an agency search every record system." *Oglesby*, 920 F.2d at 68. And here, FEMA determined based on consultation with subject matter experts, including the FEMA BPS Project Officer, that there was no need to conduct further FEMA searches because NIST was determined to be the location likely to contain all responsive materials.

Plaintiff speculates that FEMA may have had its own, separate set of BPS background data—once again ignoring the evidence that the BPS was prepared and drafted by third parties (SOF ¶¶ 2-3), that the study's prime contractor (Greenhorne & O'Mara) collected the background data for the BPS (*id.* ¶ 4), that all of the Greenhorne & O'Mara-collected background data was transferred to NIST in 2002 on behalf of FEMA (*id.* ¶¶ 5-8), and that FEMA was not provided its own set of the same records. Again, Eric Letvin, who was at Greenhorne & O'Mara at the relevant time and was responsible for collecting the background data used in the BPS study testified that he "transferr[ed] all of the data that was collected by [Greenhorne & O'Mara] to NIST." DEX 1 (FEMA Tr. at 121:4-19; 132:6-19). When asked if a separate copy of the background data was provided to FEMA, Letvin answered, "[n]o." *Id.* (FEMA Tr. at 153:3-6). Letvin testified that at

their meeting with NIST in Gaithersburg, Maryland, he "pushed the boxes across the table, and NIST took physical possession of those boxes. When I left the NIST campus that day, I did not have any materials on me, nor did Mr. Tertell." *Id*. (FEMA Tr. at 140:12-19). Letvin's testimony validates FEMA's determination upon consultation with its subject matter experts, including the FEMA Mitigation office and Paul Tertell, that the records sought by Plaintiff had been "sent to NIST." DEX 18.

Given the lack of evidence that FEMA possessed its own set of BPS background data—which, for its transfer to NIST, Greenhorne & O'Mara collected in boxes containing physical media like CDs and "many VHS tapes" and large-format architectural drawings (DEX 1 (FEMA Tr. at 116:21-117:12, 139:22-141:1); DEX 6)—Plaintiff can only speculate as to its existence. For example, Plaintiff speculates, based on the mere fact that Greenhorne & O'Mara had an FTP site for the transfer of large electronic files, that someone from FEMA "may have downloaded" files,[3] that these files may have been responsive to his FOIA request, and that these files may not have duplicated what he already received through NIST's search.[4] Opp. at 24. However, it is clear that "speculation that as yet uncovered documents might exist[ ] does not undermine the determination that the agency [has] conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) (per curiam). And here, there is no evidence that FEMA independently possessed a set of the "background or raw data used for the FEMA 403 Building

---

[3] That FEMA "may have downloaded" files from Greenhorne & O'Mara is not only speculative, the record suggests it is unlikely. Letvin testified that the FTP site was likely set up to assist BPS contributors in "transfer[ing] larger files to Greenhorne and O'Mara"—not from G&O—and he did not know if the FTP site was "open" to others to access. DEX 1 (FEMA Tr. at 137:19-138:15).

[4] According to her markup of the McAllister inventory, Beall believed there was "likely lots of dups"—or duplicates—in the backup of the FTP site. DEX 23.

Performance Study," which was drafted by third parties and not FEMA. Plaintiff's argument is that, because FEMA has not provided testimony that it transferred their "sole copies" of background data to NIST, there must be copies in FEMA's possession to be searched. *See* Opp. at 8, 14, 22. That is a non-sequitur. And again, an agency is not required to "prove a negative—that the files in question do not exist." *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986); *Stone v. Def. Investigative Serv.*, 816 F. Supp. 782, 786 (D.D.C. 1993) (granting summary judgment where "Plaintiff primarily contends that defendants' search was inadequate because plaintiff purportedly believes that additional records exist. . . . [but] provides no proof that additional records do exist").

At most, Plaintiff demonstrates that FEMA employee Bruce Swiren and Tertell were on email communications regarding the BPS. Opp. at 22-24, Cole Ex. 2. But Plaintiff's FOIA request does not seek FEMA email communications regarding the BPS and it does not, as Plaintiff misleadingly argues, "ask[] for all of FEMA's BPS records." Opp. at 21. Plaintiff's Opposition repeatedly refers to "BPS records" generally, but such materials should not be confused with the narrower set of records actually sought in Plaintiff's FOIA request. Plaintiff's FOIA sought "background or raw data used for the FEMA 403 Building Performance Study" and specifically "photos, videos, audio, field notes, memorandums, and laboratory samples, etc." SOF ¶ 1. Of course, FEMA was under no obligation to search for records that were not requested. *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984) ("Agencies must read FOIA requests as drafted[.]"); *Dillon v. Dep't of Just.*, 444 F. Supp. 3d 67, 85 (D.D.C. 2020) (ruling FOIA "does not require [an agency] to 'extend the meaning of the request to include things' that the requester did not seek") (citations omitted); *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 389 (D.C. Cir. 1996) ("A reasonable effort to satisfy [a FOIA] request does not entail an obligation to search anew based upon a

subsequent clarification" by the requester after the search has concluded.).  Thus, while Plaintiff may wish to move the goalposts, the posts are firmly anchored in the words of his May 21, 2011, request.

Plaintiff also speculates that perhaps the background data to the third party produced report could be stored at NARA.  Plaintiff offers zero evidence to suggest that the records stored at NARA actually contain any background data used in the third-party drafted BPS.  And the 2011 consultations with subject matter experts never identified NARA as a reasonably likely location for the "background or raw data" supporting the third-party produced BPS.  *See* DEX 10-18. Nonetheless, Plaintiff speculates that because a FEMA Region II employee, Bruce Swiren, was copied on BPS emails, perhaps he received BPS background data requested by Plaintiff and maybe Swiren's records ended up at NARA.  Opp. at 14-15.  Plaintiff's speculation is a legally insufficient basis to deny Defendants' Motion, *see supra*, but also not a good faith argument because Plaintiff possesses an inventory of the Region II records stored at NARA, *see* ECF No. 17-1, which lacks any indication that this employee's records are kept at NARA.

Based on nothing more than his speculation, Plaintiff no longer wants FEMA to just engage in a fruitless search of the NARA records for documents responsive to his FOIA request; Plaintiff now insists that the Court order "[a]ll records in the 490,000 pages of WTC records transferred by FEMA to NARA either be produced to Plaintiff or posted to a publicly accessible webpage, or that Plaintiff and his designated agents be allowed access to these records during normal NARA business hours for searching and copying for a period of two years."  Opp. at 26.  There is, of course, no legal basis for such relief (which is not sought in the Complaint, *see* Compl. at 4), because FOIA requesters are not entitled to relief beyond the disclosure of the records sought in their FOIA—and the FOIA request being litigated in the instant action did not seek such records.

*See* 5 U.S.C. § 552(a)(4)(B) (limiting the district court's jurisdiction "to enjoin[ing] the agency from withholding agency records and to order[ing] the production of any agency records improperly withheld from the complainant"); *Kennecott Utah Copper Corp. v. Dep't of Interior*, 88 F.3d 1191, 1202-03 (D.C. Cir. 1996) (noting that FOIA's remedial provisions limit relief to ordering the disclosure of documents). Further, records transferred by an agency to NARA may no longer be that agency's records. *See Bonaparte v. Dep't of Just*, Civ. A. No. 07-0749, 2008 WL 2569379, at *1 (D.D.C. June 27, 2008) (finding search adequate when it revealed that records had been transferred to NARA and stating that requester could request records from NARA).

In sum, the discovery record establishes that FEMA made a good faith effort through the accepted methodology of consulting with subject matter experts in multiple program and regional offices to identify locations likely to contain the requested materials. There is no dispute that FEMA correctly identified NIST as possessing the requested records, to which FEMA made a referral of the FOIA request. Plaintiff's criticisms based on speculation, disbelief of subject matter experts, and broadening the scope of the FOIA request are legally insufficient grounds on which to deny Defendants' motion for summary judgment on the adequacy of FEMA's search.

**III.   DEFENDANTS' MOTION SHOULD BE GRANTED BECAUSE NIST CONDUCTED A REASONABLY ADEQUATE SEARCH FOR THE REQUESTED RECORDS**

Plaintiff does not challenge the adequacy or reasonableness of any aspect of the search NIST conducted, including the meticulous search methodology employed by Information Specialist Kellie Beall, other than the fact that NIST's search was guided by an actual inventory of the BPS background data collected by the study's prime contractor from the study's authors and contributors and transferred to NIST on FEMA's behalf. Opp. at 19. It may seem odd that Plaintiff takes issue with NIST's use of an inventory of all the BPS background data collected and sent to it on FEMA's behalf. Nonetheless, Plaintiff argues that the so-called McAllister inventory (DEX

7) "should not have been the only basis for NIST's search because it was known to NIST generally and engineer McAllister specifically that NIST received other BPS records" from Gilzanz Murray Steficek ("GMS") in 2003, as reflected in Cole Exhibit 1. *Id*. at 19-20. Stated differently, Plaintiff argues that because NIST allegedly missed a subset of responsive materials, NIST did not conduct a reasonably adequate search.

As a legal matter, and as stated in Defendants' Motion, the law in this Circuit is that "the adequacy of a search is 'determined not by the fruits of the search, but by the appropriateness of [its] methods.'" *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) (quoting *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)). Plaintiff does not dispute the law in his Opposition. And, significantly, Plaintiff does not explain why, despite this being the law, the purported failure to find certain select "fruits" means NIST's search was inadequate. Thus, the alleged failure to produce certain records NIST received from GMS is not by itself a basis to deny NIST's motion for summary judgment. Yet that is effectively the only basis for Plaintiff's challenge to NIST's search. Accordingly, as a matter of law, it is not a basis for denying NIST's motion for summary judgment. *See Iturralde*, 315 F.3d at 315 ("[I]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate. . . . After all, . . . a reasonable and thorough search may have missed [particular documents].").

Again, an agency need only show that it "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Reporters Comm.*, 877 F.3d at 402 (citations omitted). NIST's motion should be granted because the evidence shows that NIST employed a reasonably adequate methodology that involved consultation with the two personnel most knowledgeable about the background and raw

data used for the BPS, Letvin and McAllister, both of whom worked on the BPS during their prior employment at Greenhorne & O'Mara.  *See* DEX 6.  That methodology also utilized an inventory that was essentially a list of the very materials being sought by Plaintiff, and so it would be incongruous to conclude that it was unreasonable of NIST, which was not involved in the BPS, to rely on the McAllister inventory as a guide for its search.  "[T]he proper inquiry is whether the Government has made reasonable use of the information readily available to it," which NIST clearly did.  *Schrecker v. Dep't of Just.*, 349 F.3d 657, 662 (D.C. Cir. 2003) (adding, "[t]he reviewing court therefore should not focus primarily on the agency's rate of success in unearthing the information sought").

Plaintiff argues that "NIST arbitrarily . . . limited [its] search" to the inventory, Opp. at 7, but this hyperbolic charge has no merit because the McAllister inventory was the record available in 2011 specifically tracking the background data and materials that had been collected in 2002 by Greenhorne & O'Mara, the BPS prime contractor, and transferred on FEMA's behalf, to NIST.  SOF ¶ 36.  Accordingly, the decision to use this inventory was rational (*i.e.*, the opposite of arbitrary).  Similarly, Plaintiff tries to paint NIST's efforts in nefarious terms by stating that NIST "limited" its search to only finding the contents listed on this inventory.  For example, Plaintiff argues that Information Specialist Beall's search was "constrained," "limited," or "controlled" by McAllister, but there is no testimony of Beall to that effect.  Further, any decision to search in one location and not another or to use one search methodology and not another can be spun as a "limitation."  The real question is whether the search methodology was reasonable.  *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) ("The adequacy of an agency's search is measured by a 'standard of reasonableness[.]'") (citations omitted); *Meeropol*, 790 F.2d at 956 (a search need not "be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in

light of the specific request."). Consulting the subject matter experts, using the McAllister inventory, and going through the meticulous, multi-step process employed by Ms. Beall to find the records listed on the inventory was unquestionably reasonable.

But Plaintiff's argument based on the GMS letter in Cole Exhibit 1 is unavailing for additional reasons. First among them is that NIST had received a referral of a request directed to FEMA requesting that FEMA produce its agency records of "background or raw data used for the FEMA 403 Building Performance Study, concerning the World Trade Center[,]" including "photos, videos, audio, field notes, memorandums, and laboratory samples, etc." SOF ¶ 1. To constitute an agency record, the record must have been "either create[d] or obtain[ed]" by the agency. *Forsham v. Harris*, 445 U.S. 169, 182 (1980); *Beveridge & Diamond, P.C. v. Dep't of Health & Hum. Servs.*, 85 F. Supp. 3d 230, 237 (D.D.C. 2015) (EGS) ("[T]o qualify as an 'agency record' . . ., the defendants must have either created or obtained the data, *and* have been in control of the data at the time the FOIA request was made."). In contrast to the material FEMA obtained from Greenhorne & O'Mara for purpose of the transfer to NIST in Gaithersburg, MD, the GMS materials were obtained directly by NIST pursuant to a NIST purchase order for NIST's own World Trade Center analysis. Cole Ex. 1; Second Fletcher Decl. ¶ 11. As discussed below, Plaintiff has considered them to be NIST agency records in the past.[5]

Further, even if they could be construed as FEMA agency records, it is not evident that they are responsive to Plaintiff's FOIA request because it is not apparent to NIST that the GMS materials were "used" in the BPS. Second Fletcher Decl. ¶ 9. The January 28, 2003, letter from

---

[5]   In passing, Plaintiff suggests that FEMA should have "task[ed]" its contractors with searches of its own files, Opp. at 13, but contractors' records that were not obtained by FEMA for purposes of the 2002 data transfer to NIST in Gaithersburg, MD do not meet the legal definition of FEMA "agency records."

GMS states that they were collected "under the auspices" of the Building Performance Study, not that they were "used" in the study. Cole Ex. 1.

Finally, even if the GMS materials were considered FEMA agency records and responsive to the FOIA request, there is no basis for Plaintiff's request that the Court order NIST to conduct a "new search" for "the files transferred by GMS to NIST in 2003" and that they "be produced to Plaintiff." Opp. at 26. Plaintiff neglected to inform the Court that he already requested these very same materials from NIST roughly a decade ago and received them, as set forth in greater detail in the Second Fletcher Declaration.[6] On February 21, 2012, Plaintiff submitted to NIST a FOIA request (No. 12-090) seeking an inventory of all of NIST's "WTCI" files. Second Fletcher Decl. ¶ 6, Ex. C. Then on July 2, 2012, Plaintiff submitted to NIST a FOIA request (No. 12-168) specifically requesting record "WTCI-93-I"—which was the file number given to the material provided by GMS to NIST as reflected in Cole Exhibit 1 (see label at top-right corner of page 2 of Ex. 1). *Id.* ¶ 12, Ex. A. NIST's FOIA records indicate that FOIA No. 12-168 was completed on March 4, 2013. *Id.* ¶ 13. As reflected in Cole Exhibit 1, there is a notation to "see 134-I for additional materials," and Plaintiff made a FOIA request (No. 12-188) for WTCI-134-I on July 30, 2012. *Id.* ¶ 14, Ex. D. NIST completed FOIA No. 12-188 on September 25, 2015. *Id.* ¶ 15, Ex. E. Because Plaintiff has already requested and received the materials reflected in Cole Exhibit 1

---

[6]     So, for example, when Plaintiff states that 'the 'Steficek video'" is "an important responsive record that likely would have been located had NIST conducted an actual search of their WTC database and found the 2003 GMS transfer," it would seem that Plaintiff knows the answer. The claim appears doubtful, however, as the "Steficek video" identified by Plaintiff (*see* Opp. at 11)—item 98 in the Steel Data Collection Spreadsheet in Appendix D to the final BPS report—is described as footage of a portion of a spandrel plate and two bolts from either WTC 1 or WTC 2. *See* https://www.fema.gov/pdf/library/fema403_apd.pdf p. 22. But according to Plaintiff's exhibit, the Steficek videos contained in the materials provided by GMS consisted of footage of debris that came from WTC 5. *See* Cole Ex. 1 at 25.

from NIST, there is no basis for a court order compelling a search for these GMS materials as part of a FOIA request to FEMA.[7]

## CONCLUSION

Defendants respectfully submit that the methodologies employed by both FEMA and NIST were reasonably adequate and consistent with their obligations under FOIA, and indisputably led to the identification and release of responsive records to Plaintiff. Accordingly, Defendants' motion for summary judgment should be granted and Plaintiff's efforts to prolong litigation should be denied.

Dated: September 30, 2022

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

　/s/ Sean Tepe　
SEAN M. TEPE, DC Bar #1001323
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
Telephone: (202) 252-2533
Sean.Tepe@usdoj.gov

*Counsel for Defendants*

---

[7]  It is worth noting that rather than contend that a search in response to a broader, generalized FOIA request is flawed, the remedy is usually to submit a subsequent, more specific request based on previously obtained leads. *See Kowalczyk*, 73 F.3d at 389 ("[T]he [agency] is not obliged to look beyond the four corners of the request for leads to the location of responsive documents. Of course, if the requester discovers leads in the documents he receives from the agency, he may pursue those leads through a second FOIA request."). In his FOIA request Nos. 12-168 and 12-188, Plaintiff followed up on leads provided by his FOIA request No. 12-090.