**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DAVID COLE,

              Plaintiff,

v.

LAURIE E. LOCASCIO,[1] *et al.*,

              Defendants.

Civ. Action No. 15-1991 (EGS/GMH)

<u>**MEMORANDUM OPINION**</u>

    Plaintiff David Cole ("Mr. Cole" or "Plaintiff") initiated this action against the National Institute of Standards and Technology ("NIST") and the Federal Emergency Management Agency ("FEMA," together "Defendants") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. *See* Compl. for Injunctive Relief, ECF No. 1. Mr. Cole claims that Defendants have made an inadequate search for and disclosure of records responsive to his 2011 FOIA request related to the collapse of the World Trade Center ("WTC") on September 11, 2001. *See id.* ¶¶ 9-25. After this Court granted Mr. Cole limited discovery, *see* Mem. Op.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the current Director of the National Institute of Standards and Technology, Laurie E. Locascio, is substituted as Defendant for former Director of the National Institute of Standards and Technology, Walter G. Copan. *See* Fed. R. Civ. P. 25(d).

("Discovery Op."), ECF No. 48 at 41;[2] Magistrate Judge Harvey oversaw the production of discovery and issued a Report and Recommendation on the parties' new motions for summary judgment. *See* Magistrate Judge's R. & R. ("R. & R."), ECF No. 67.

Pending before the Court are Defendants' Renewed Motion for Summary Judgment, *see* Renewed Mot. for Summ. J. ("Defs.' Mot."), ECF No. 56; and Mr. Cole's Cross Motion for Summary Judgment, *see* Pl. David Cole's Am. Cross Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 61-2.[3] Magistrate Judge Harvey recommends that this Court grant FEMA's motion for summary judgment, dismiss Mr. Cole's claim against NIST as moot, and deny Mr. Cole's motion for summary judgment. *See* R. & R., ECF No. 67 at 2. Mr. Cole raises five main objections to Magistrate Judge Harvey's Report and Recommendation, *see* Pl. David Cole's Objs. to Magistrate Judge's R. & R. ("Pl.'s Objs."), ECF No. 68; while Defendants argue that the Report and Recommendation "should be adopted in full without hesitation," Defs.' Resp. to Pl.'s Objs. to Magistrate Judge's R. & R. ("Defs.' Resp."), ECF No. 69.

---

[2] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

[3] Although Mr. Cole's original cross motion for summary judgment was filed and docketed under ECF No. 59, Mr. Cole filed an unopposed motion to amend/correct his cross motion, which was docketed under ECF No. 61. Magistrate Judge Harvey only considered Mr. Cole's amended submission in his Report and Recommendation, *see* R. & R., ECF No. 67 at 1 n.1; and this Court does so as well.

Upon careful consideration of the Report and Recommendation, the objections and opposition thereto, the applicable law, and the entire record herein, the Court hereby **ADOPTS** the Report and Recommendation, *see* ECF No. 67; **GRANTS** Defendant FEMA's Motion for Summary Judgment, *see* ECF No. 56; **DISMISSES** Plaintiff's claim against NIST as moot; and **DENIES** Plaintiff's Motion for Summary Judgment, *see* ECF No. 61.

## I.  Background[4]

### A.  Factual Background

FEMA contracted with engineering consultancy company Greenhorne & O'Mara, Inc. ("G&O") to produce a Building Performance Study ("BPS") related to the 2001 collapse of the WTC. *See* Defs.' Reply to Pl.'s Counter-Statement of Facts as to Which There is a Genuine Issue ("Defs.' SOMF"), ECF No. 64-1 ¶¶ 1-2. The G&O team comprised a wide variety of subject matter experts, including several FEMA workers. *See id.* ¶¶ 3-4. The FEMA project officer for the BPS was Paul Tertell ("Mr. Tertell") and the G&O Project Manager was Eric Letvin ("Mr. Letvin"). *See* Ex. 4 in Supp. of Defs.' Renewed Mot. for Summ. J. ("BPS Report"), ECF No. 56-2 at 83. The team also included Therese McAllister ("Ms. McAllister"), a G&O Senior Structural

---

[4] This section largely reflects the Background provided in Magistrate Judge Harvey's Report and Recommendation, *see* R. & R., ECF No. 67 at 2-11. The facts reflected within are undisputed unless otherwise noted.

Engineer, and Bruce Swiren ("Mr. Swiren"), a FEMA Region II

Senior EMP Specialist. *Id.* The BPS was published in May 2002.

*Id.* at 81.

Also in May 2002, G&O transferred to NIST the background

data that had been collected by G&O for the BPS since NIST was

conducting its own investigation of the WTC's collapse. *See*

Defs.' SOMF, ECF No. 64-1 ¶ 5;[5] R. & R., ECF No. 67 at 3 n.3. G&O

conducted this transfer of materials on behalf of FEMA and the

boxes of materials were catalogued in an inventory known as the

"McAllister Inventory." *See* Defs.' SOMF, ECF No. 64-1 ¶¶ 5-7.

Additional BPS materials were provided to NIST by G&O in

November 2002. *Id.* ¶ 8. And in January 2003, a separate FEMA

contractor, Gilzanz Murray Steficek ("GMS"), transferred BPS

records to NIST. *See* Defs.' Counter Statement to Pl.'s Statement

of Material Undisputed Facts in Supp. of Renewed Cross Mot. for

Summ. J. ("Pl.'s SOMF"), ECF No. 65-1 ¶¶ 14-15.

In May 2011, Mr. Cole submitted the FOIA request at issue

in this case. Defs.' SOMF, ECF No. 64-1 ¶ 1. The request sought

"background or raw data used for the FEMA 403 Building

Performance Study, concerning the World Trade Center" including

---

[5] Plaintiff disputes whether "all" of the G&O data for the BPS
was transferred to NIST, specifically disputing whether "G&O
kept no copies of any of the transferred records" and whether
"G&O may or may not have possessed" records from a separate
contractor. *See* Defs.' SOMF, ECF No. 64-1 ¶ 5.

"photos, videos, audio, field notes, memorandums, and laboratory samples, etc." *Id.* Upon receiving Mr. Cole's request, the FEMA Disclosure Branch tasked searches to three FEMA Departments— FEMA's Region II, Office of External Affairs, and Federal Insurance and Mitigation Administration ("FIMA"). *Id.* ¶¶ 11-12. The Disclosure Branch also engaged FEMA's BPS Project Officer Mr. Terrell as part of its search for responsive documents and review of records collected by NIST before release to Mr. Cole. *Id.* ¶¶ 23-25.

FEMA's Region II Point of Contact stated that Region II did not possess the records and recommended that FEMA HQ be contacted for a search. *Id.* ¶ 18.[6] The Office of External Affairs responded that it did not possess the requested records beyond any photos that might be on FEMA's public website. *Id.* ¶ 14. FIMA responded that "all" information responsive to Mr. Cole's request "was sent to NIST about 8 years ago." *Id.* ¶ 22.[7] Based on

---

[6] Plaintiff "[d]enie[s]" this fact "in part" because he claims the assertion was made "without a search having been conducted of FEMA's computer and emails at Region II" and because he believes that "Region II official Bruce Swiren would likely have possessed responsive BPS records in his emails and on his computer." Defs.' SOMF, ECF No. 64-1 ¶ 18. His objections, however, do not challenge the factual assertion that FEMA's Region II Point of Contact made this response.

[7] Plaintiff denies this fact to the extent that "'all' . . . is intended to mean 'sole copies,'" and adds that "*no* FEMA computer hard drives, FEMA emails, FEMA electronic backups, or FEMA paper records" were transferred to NIST "from FEMA's own personnel, but rather FEMA only directed the transfer of *contractor* records to NIST." Defs.' SOMF, ECF No. 64-1 ¶ 22. His objections,

the responses from the three FEMA departments, FEMA forwarded Mr. Cole's FOIA request to NIST. *Id.* ¶ 26.

   In December 2011, NIST FOIA Officer Catherine Fletcher ("Ms. Fletcher") received the forwarded request. *Id.* ¶ 27. Based on NIST's experience with other FOIA requests relating to the collapse of the WTC and its consultation with subject matter experts, the NIST FOIA office identified its Engineering Laboratory as the office most likely to possess the records. *See id.* ¶ 29. The NIST's Engineering Laboratory maintains a database of all materials received as part of its investigation into the failure of the World Trade Center buildings, including the BPS records transferred on FEMA's behalf by G&O in 2002. *Id.* ¶ 30. The Engineering Laboratory engaged subject matter experts John Gross, Mr. Letvin, and Ms. McAllister (both now NIST employees) regarding Mr. Cole's FOIA request. *Id.* ¶ 32.

   NIST Information Specialist Kellie Beall ("Ms. Beall") conducted the search, which consisted of locating items from the McAllister Inventory in the NIST database and then retrieving and reviewing the items "to further confirm" whether or not it matched the item on the list. *Id.* ¶¶ 37-39.[8] Ms. Beall then

---

however, do not challenge the factual assertion that FIMA's Point of Contact provided this response.

[8] Plaintiff "[d]enie[s]" these facts, arguing *inter alia*, that confining the search to the McAllister Inventory was arbitrary and Ms. Beall "was not allowed to conduct a search of the NIST Engineering Lab." *Id.* ¶ 37. However, his objections do not

checked off every item that she located and noted the NIST file name associated with that item. *Id.* ¶ 40. She found all but two items on the McAllister Inventory and transferred all the records she found to the FOIA office. *Id.* ¶¶ 41-42. NIST then referred the request back to FEMA, providing copies of all BPS records it had located. *Id.* ¶ 43.[9] NIST also directly produced to Mr. Cole BPS records that it determined were already in the public domain, including 2,435 images, 83 video files, and 269 pages of FEMA records. *Id.* ¶ 44.

In June 2012, FEMA determined that 3,789 pages of responsive records had been located and identified by NIST as releasable to Mr. Cole. Pl.'s SOMF, ECF No. 65-1 ¶ 4. In August 2012, FEMA notified Mr. Cole of an additional 490,000 pages of WTC records located at the National Archives and Records Administration ("NARA") but noted that the inventory description of the NARA records did "not readily indicate any additional responsive material" for Mr. Cole's specific WTC requests, inviting Mr. Cole to "submit a new FOIA request" if he wanted searches to be "conducted on [those] records." *Id.* ¶ 5; Pl.

---

address the underlying factual assertions that NIST's search was conducted in the manner described.

[9] Plaintiff "[d]enie[s]" this fact on the basis that some records "have never been provided to Mr. Cole." Defs.' SOMF, ECF No. 64-1 ¶ 43. However, that assertion, which itself is unsupported by any reference to the record, does not contradict the factual assertion that NIST provided FEMA all the records NIST found in its search.

David Cole's Combined Mot. Pursuant to Rule 56 for Leave to
Conduct Limited Disc. Before a Resp. to Defs.' Summ. J. Mot. is
Required, and for Summ. J.—Ex. 8, ECF No. 28-12 at 2. As
described in this Court's prior opinion, FEMA and NIST each
believed that the other agency would provide a final response
and production of responsive documents to Mr. Cole but neither
did so. *See* Discovery Op., ECF No. 48 at 5-8; *see also* R. & R.,
ECF No. 67 at 7-8.

In the meantime, before the initiation of this litigation,
Mr. Cole sought several other records related to the issues in
this case. In July 2012, he sought from NIST, record number
WTCI-93-I, which corresponded to the materials NIST received
from the GMS transfer in January 2003. Second Decl. of Catherine
S. Fletcher ("Second Fletcher Decl."), ECF No. 64-2 ¶¶ 10, 12.
The request was assigned number 12-168; was closed on March 4,
2013; and the only withholdings from the record were "personal
information withheld pursuant to FOIA Exemption 6." *Id.* ¶¶ 12-
13.[10] Mr. Cole also sought from NIST, record number WTCI-134-I,
which was an updated version of record WTCI-93-I. *See id.* ¶ 14;

---

[10] Plaintiff disputes the release of all records from this FOIA
request, *see* Pl.'s Objs., ECF No. 68 at 5 ("The record does not
support this fact finding to the extent the Magistrate Judge
intended to represent in this finding that Cole was provided all
of the BPS records that GMS transferred to NIST on January 28,
2003 rather than just the 34-page transmittal memo."). A full
discussion of Plaintiff's contention can be found in Section
III.B of this opinion.

Second Decl. of Catherine S. Fletcher—Ex. D ("NIST FOIA Request 12-188"), ECF No. 64-2 at 19. Mr. Cole's request was assigned number 12-188; was closed on September 25, 2015; and resulted in the release of 1,312 files in full, some files released with redactions, some files withheld under FOIA Exemption 4, and 1 file referred to FEMA for review and direct response. Second Fletcher Decl., ECF No. 64-2 ¶¶ 14-15.

### B.   Procedural Background

After receiving no responsive records from FEMA or NIST for two-and-a-half years, Mr. Cole filed this lawsuit in November 2015. *See* Compl., ECF No. 1. Mr. Cole alleged that FEMA violated FOIA by failing to search the NARA records and that FEMA and NIST violated FOIA's disclosure requirements by failing to produce the 3,789 pages of responsive records that the agencies identified in June 2012. *See id.* ¶¶ 13-17, 22-23.

FEMA released the previously identified responsive documents with redactions in April and September 2016. *See* Apr. & Sept. 2016 Correspondence to Pl., ECF No. 23-4 at 1-2. In June 2016, Mr. Cole sent FEMA a list of records he identified as missing from production. *See* Pl. David Cole's Combined Mot. Pursuant to Rule 56 for Leave to Conduct Limited Disc. Before a Resp. to Defs.' Summ. J. Mot. is Required, and for Summ. J.—Ex. 2, ECF No. 30-6 at 1-2. FEMA replied that it could not locate some of the identified records, that "FEMA's Region 2 has

indicated that these documents may be available in the Regional
off site archives," and that "the agency [was] willing to send
two of its personnel to the warehouse to perform a reasonable
search." *Id.* at 1. Mr. Cole requested a search of the Region 2
off site archives for some of the missing documents. *See* Pl.
David Cole's Combined Mot. Pursuant to Rule 56 for Leave to
Conduct Limited Disc. Before a Resp. to Defs.' Summ. J. Mot. is
Required, and for Summ. J.—Ex. 3, ECF No. 30-7 at 3-5. In
November 2016, FEMA provided its final response to Mr. Cole. *See*
Pl. David Cole's Combined Mot. Pursuant to Rule 56 for Leave to
Conduct Limited Disc. Before a Resp. to Defs.' Summ. J. Mot. is
Required, and for Summ. J.—Ex. 4, ECF No. 30-8. It stated that
FEMA had sent all responsive records in its possession to Mr.
Cole, it could not locate the missing records that Mr. Cole's
counsel identified, and that based on its consultation with a
subject matter expert, "there is no FEMA Region 2 archive and
the responsive records were not sent to the NARA archives." *Id.*
at 2.

In March 2017, Mr. Cole moved for limited discovery,
arguing that Defendants' search and disclosures were inadequate
and that the evidence suggested bad faith on Defendants' part.
*See* Pl. David Cole's Mem. of P. & A. in Supp. of Mot. for Leave
to Conduct Limited Disc., ECF No. 15-1. In January 2018, this
Court denied the motion, holding that discovery was premature

but noting that Mr. Cole had raised "significant questions" about Defendants' good faith and that it was "troubled by multiple aspects of the government's actions." Mem. Op. & Order, ECF No. 19 at 8-9.

In April 2018, Defendants moved for summary judgment. *See* Defs.' Mot. for Summ. J., ECF No. 23. That June, Mr. Cole filed a combined motion for limited discovery and summary judgment. *See* Pl. David Cole's Combined Mot. Pursuant to Rule 56 for Leave to Conduct Limited Disc. Before a Resp. to Defs.' Summ. J. Mot. is Required, and for Summ. J., ECF No. 30. The case was referred to Magistrate Judge Harvey, *see* Minute Order (Jan. 7, 2019); who issued his Report and Recommendation in March 2019, *see* Magistrate Judge's R. & R., ECF No. 37.

This Court adopted Magistrate Judge Harvey's Report and Recommendation in large part, disagreeing only with the conclusion that Defendants did not explain their delay in releasing the responsive documents. *See* Discovery Op., ECF No. 48 at 40-41. This Court granted Mr. Cole's request for limited discovery regarding "the adequacy of the Defendants' searches, excluding the question of whether responsive records were stored in the Region II warehouses." *Id.* at 41. Accordingly, this Court also denied Defendants' Motion for Summary Judgment and denied Mr. Cole's Cross-Motion for Summary Judgment "as premature." *Id.*

11

The parties conducted discovery until July 2022. *See* Scheduling Order, ECF No. 55.

Defendants renewed their motion for summary judgment on July 29, 2022. *See* Defs.' Mot., ECF No. 56. Mr. Cole filed his Amended Joint Cross Motion for Summary Judgment and brief in Opposition to Defendants' Motion for Summary Judgment in September 2022. *See* Pl.'s Mot., ECF No. 61-2. Both parties filed their replies. *See* Combined Reply in Supp. of Defs.' Renewed Mot. for Summ. J. & Opp'n to Pl.'s Cross-Mot. for Summ. J., ECF No. 64; Pl. David Cole's Reply Mem. in Supp. of Pl.'s Cross Mot. for Summ. J., ECF No. 66.

On February 14, 2023, Magistrate Judge Harvey issued his Report and Recommendation on the motions, recommending that FEMA's Motion for Summary Judgment be granted; Mr. Cole's claim against NIST be dismissed as moot; and Mr. Cole's Cross Motion for Summary Judgment be denied. *See* R. & R., ECF No. 67 at 27. Mr. Cole timely filed his objections to the Report and Recommendation. *See* Pl.'s Objs., ECF No. 68. Defendants filed their response, *see* Defs.' Resp., ECF No. 69; and Mr. Cole filed his reply, *see* Pl. David Cole's Reply on Objs. to Magistrate Judge's R. & R. ("Pl.'s Reply"), ECF No. 70. The cross motions for summary judgment and Plaintiff's objections to Magistrate

Harvey's Report and Recommendation on the motions are now ripe
and ready for adjudication.

## II.  Legal Standard

### A.  Objections to a Magistrate Judge's Report and Recommendation

Pursuant to Federal Rule of Civil Procedure 72(b), a party
may file specific written objections once a magistrate judge has
entered a recommended disposition. Fed. R. Civ. P. 72(b)(1)-(2).
A district court "may accept, reject, or modify the recommended
disposition." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C.
§ 636(b)(1). A district court "must determine de novo any part
of the magistrate judge's disposition that has been properly
objected to." Fed. R. Civ. P. 72(b)(3). Objections must
"specifically identify the portions of the proposed findings and
recommendations to which objection is made and the basis for the
objection." LCvR 72.3(b).

### B.  Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary
judgment motions must be granted if "there is no genuine dispute
as to any material fact and the movant is entitled to judgment
as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party
bears the initial burden "of informing the district court of the
basis for its motion, and identifying those portions of 'the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(c)(1). This burden "may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

In evaluating a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255. Summary judgment turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party" then the district court cannot grant summary judgment. *Id.* at 248.

For purposes of summary judgment, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of

14

the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

### C.   FOIA

FOIA is based on the recognition that an informed citizenry is "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). It was enacted to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny," and it favors "full agency disclosure." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (internal quotation marks omitted). FOIA cases are usually resolved on motions for summary judgment. *See Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). The agency has the burden of justifying its response to the FOIA request it received, and the court reviews its response *de novo*. *See* 5 U.S.C. § 552(a)(4)(B).

### D.   Adequate Search

To prevail on summary judgment in a FOIA case, the agency must show that it conducted an adequate search for records responsive to the plaintiff's FOIA request. *See Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007). To prevail on summary judgment, the agency must demonstrate that it made a good-faith effort to search for responsive records "using methods which can

be reasonably expected to produce the information requested."
*Reps. Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 402
(D.C. Cir. 2017) (quoting *Oglesby v. U.S. Dep't of the Army*, 920
F.2d 57, 68 (D.C. Cir. 1990)); *see Iturralde v. Comptroller of
Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (adequacy depends
on the "appropriateness of the methods used to carry out the
search" rather than the "fruits of the search").

It may do so by submitting "[a] reasonably detailed
affidavit, setting forth the search terms and the type of search
performed, and averring that all files likely to contain
responsive materials (if such records exist) were searched."
*Reps. Comm. for Freedom of the Press*, 877 F.3d at 402 (quoting
*Oglesby*, 920 F.2d at 68). Such affidavits "are accorded a
presumption of good faith, which cannot be rebutted by 'purely
speculative claims about the existence and discoverability of
other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197,
1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*,
692 F.2d 770, 771 (D.C. Cir. 1981)). However, "[a]t a bare
minimum, the agency's affidavits need to specify 'what records
were searched, by whom, and through what process.'" *Rodriguez v.
Dep't of Def.*, 236 F. Supp. 3d 26, 38 (D.D.C. 2017) (quoting
*Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir.
1994)).

"The agency fails to meet this burden such that summary judgment is inappropriate when the agency fails to set forth the search terms and the type of search performed with specificity or otherwise provides 'no information about the search strategies of the [agency] components charged with responding to [a] FOIA request' and no 'indication of what each [component's] search specifically yielded.'" *Otero v. Dep't of Justice*, 292 F. Supp. 3d 245, 251 (D.D.C. 2018) (quoting *Reps. Comm. for Freedom of the Press*, 877 F.3d at 403).

### III. Analysis

Mr. Cole makes five main objections to Magistrate Judge Harvey's Report and Recommendation. First, he objects to the recommendation to grant Defendants summary judgment because he claims the Report and Recommendation "failed to decide [Mr. Cole's] second summary judgment argument regarding Defendants' failure to disclose responsive records that were actually located in Defendant NIST's search." Pl.'s Objs., ECF No. 68 at 1. Second, he objects to the recommendation that his claim against NIST be dismissed as moot because "Defendants have not met their heavy burden to demonstrate mootness and the record evidence shows that there remains a live controversy." *Id.* at 4. Third, he objects to Magistrate Judge Harvey's conclusion that FEMA's search was adequate because "FEMA failed to search any of its own agency records even after being placed on notice that

known responsive documents had not been located via NIST's search." *Id.* at 9. Fourth, he objects to Magistrate Judge Harvey's conclusion that "FEMA had no obligation under FOIA to search the 490,000 pages of FEMA World Trade Center records sent to the National Archives (NARA)." *Id.* at 19. And fifth, largely relying on his previous arguments, Mr. Cole objects to Magistrate Judge Harvey's recommendation that his summary judgment motion be denied. *Id.* at 22. Defendant does not object to the Report and Recommendation and argues that the "thorough and legally sound recommendation . . . should be adopted in full without hesitation." Defs.' Resp., ECF No. 69 at 1.

Unless otherwise noted, the Court reviews the parts of the Report and Recommendation which have been objected to *de novo* because Mr. Cole has made specific objections in which he has identified both "the portions of the proposed findings and recommendations to which [he objects] and the basis for [his] objection[s]." LCvR 72.3(b); *see also* Fed. R. Civ. P. 72(b)(3).

### A. Failure to Disclose Responsive Records

Mr. Cole argues that the Report and Recommendation "fails to address" his argument that "certain responsive records located during NIST's search . . . were never disclosed" to him and that therefore Defendants "are in violation of FOIA's requirement to make a full disclosure of responsive documents in their possession." Pl.'s Objs., ECF No. 68 at 1. Defendants

18

respond that the "Report does address [Mr. Cole's] argument" by
explaining that "the fact that [Mr. Cole] believes he did not
receive something during production does not undermine the
reasonableness of the search." Defs.' Resp., ECF No. 69 at 4
(citing R. & R., ECF No. 67 at 19-20).

　　　　Looking to the Report and Recommendation and the history of
Mr. Cole's claims, the Court concludes that Mr. Cole is correct
in asserting that the Report and Recommendation did not address
his argument about missing documents as a violation of
Defendants' disclosure obligations. In the factual background of
the Report and Recommendation, Magistrate Judge Harvey notes
that Mr. Cole disputes NIST's claim that it "provided copies of
all [the relevant] record[s] to FEMA" "based, apparently, on the
fact that [Mr. Cole] cannot locate in the materials he was
provided by FEMA certain documents on the McAllister Inventory
that Beall noted she had found." R. & R. ECF No. 67 at 6 & n.12.
As Defendants point out, in the Report and Recommendation's
analysis, Magistrate Judge Harvey then rejects Mr. Cole's
"assertion that FEMA's search should be deemed inadequate
because [certain documents] were missing from FEMA's
production." *Id.* at 19. Thus, it appears that Magistrate Judge
Harvey interpreted Mr. Cole's arguments about the missing
documents as arguments related only to the adequacy of
Defendants' search, which Magistrate Judge Harvey understood as

the only issue left for summary judgment. *See* R. & R., ECF No. 67 at 1 (describing the parties' "dueling motions for summary judgment" as "the government again defend[ing] the agencies' searches and Plaintiff again claim[ing] that they were inadequate").

However, looking to the record on Mr. Cole's claims, the Court concludes that this interpretation is erroneous. Although Magistrate Judge Harvey was correct that the "first round of summary judgment and related motions resulted in a decision allowing Plaintiff to engage in limited discovery as to the adequacy of FEMA's and NIST's search for the requested documents," R. & R., ECF No. 67 at 1; he erred in concluding that the issues for consideration on the current motions for summary judgment were narrowed accordingly. In Mr. Cole's most recent Motion for Summary Judgment, he argued that the failure to produce certain documents was proof of an inadequate search by Defendants. *See* Pl.'s Mot., ECF No. 61-3 at 10-13. This is the argument that Magistrate Judge Harvey considered and rejected in his Report and Recommendation. *See* R. & R., ECF No. 67 at 19-20.

However, in a separate section of his Motion for Summary Judgment, Mr. Cole also argued that the failure to produce certain records located in Defendants' search "reflects . . . a violation of Defendants' disclosure obligations under the FOIA."

Pl.'s Mot., ECF No. 61-3 at 18; *see also id.* ("Here, Ms. Beall's testimony that she located specific records that she physically checked off on her copy of the McAllister Inventory, combined with Defendants' failure to date to produce those records to Plaintiff Cole, also reflects a bad faith violation of FOIA's disclosure requirements."). This is the same argument Mr. Cole advanced in his first Motion for Summary Judgment in 2018. *See* Pl. David Cole's Mem. of P. & A. in Supp. of Mot. for Summ. J., ECF No. 26-1 at 5 (arguing that Mr. Cole is "entitled to summary judgment on his claim that Defendant NIST failed to make a complete disclosure of responsive records" based on Defendants' failure to disclose "records for which Plaintiff Cole has evidence to show their existence but which Defendants have not produced to Plaintiff"). This Court's previous opinion addressing the initial motions for summary judgment and granting Mr. Cole limited discovery did not address this argument. *See* Discovery Op., ECF No. 48 at 20 (clarifying that "[t]he Court does not discuss the parts of Magistrate Harvey's R. & R. to which no objection is raised"). It only denied Mr. Cole's motion for summary judgment as premature and granted him limited discovery on the search issue. *See id.* at 41. Nowhere in the opinion did this Court narrow the remaining issues in the case to the adequacy of Defendants' search. Therefore, since Mr. Cole's argument about missing documents indicating a disclosure

violation under FOIA was not addressed in this Court's previous opinion and because he renewed this argument in the current round of motions for summary judgment, the Report and Recommendation erred by not addressing the argument.

However, reviewing the issue *de novo*, the Court concludes that Mr. Cole is not entitled to summary judgment on this claim and that the claim does not preclude this Court from granting summary judgment to Defendants.

Throughout this litigation, Mr. Cole has referenced various documents he claims he never received from Defendants. *See* Pl.'s SOMF, ECF No. 65-1 ¶ 30 (stating that "key responsive BPS records were located by NIST before the litigation but were not provided to Plaintiff Cole when Defendants produced, after this litigation was filed, the above-referenced approximately 3,700 pages of non-exempt responsive records"); Pl.'s Mot., ECF No. 61-3 at 17 (listing "key responsive records including certain WTC drawings, certain BPS data CDs, and FEMA's FTP (web) site backup files" as "among those noted by Plaintiff as missing in Defendants' original post-Complaint FOIA response document productions to Plaintiff"); Pl.'s Objs., ECF No. 68 at 2 n.1 (stating that "FEMA's FTP website backup files . . . also have yet to be produced to Cole"). However, Mr. Cole only has evidence substantiating his argument for three documents. In his second declaration, Mr. Cole states that he has been "unable to

locate the Steficek Video," he has "yet to be provided by
Defendants WTC Drawings numbered 8-11 through 8-18," and he has
not been provided "a number of photographs taken by Jonathan
Barnett for the BPS." Pl. David Cole's Reply Mem. in Supp. of
Pl.'s Cross Mot. for Summ. J.—Ex. 3 ("Second Cole Decl."), ECF
No. 66-1 ¶¶ 1-3. In his objections, Mr. Cole faults the Report
and Recommendation for narrowing his argument to certain
documents "based on an unintended restrictive reading of Cole's
Second Declaration." Pl.'s Objs., ECF No. 68 at 2. But summary
judgment requires parties to substantiate their factual claims
with evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Thus, the Report
and Recommendation was correct to narrow Mr. Cole's arguments
and similarly this Court may only consider Mr. Cole's arguments
related to the documents he properly claims Defendants have
failed to produce.[11]

Furthermore, since Mr. Cole's argument rests on the claim
that Defendants actually found, but failed to produce, certain

---

[11] In Mr. Cole's first declaration, he claimed several other
documents had not been produced by Defendants. *See* Pl. David
Cole's Combined Mot. Pursuant to Rule 56 for Leave to Conduct
Limited Disc. Before a Resp. to Defs.' Summ. J. Mot. is
Required, and for Summ. J.—Ex. 5 ("First Cole Decl."), ECF No.
30-9. However, since that declaration was signed over seven
years ago and Mr. Cole has not directed the Court to it in his
current briefing, the Court will not consider it. *See* Fed. R.
Civ. P. 56(c)(3) ("The court need consider only the cited
materials, but it may consider other materials in the record.").
Accordingly, the Court concludes that only the documents

documents, the Court may only consider his claim related to
documents the evidence has shown were found by Defendants. As
Mr. Cole notes, this universe of documents is the list of items
Ms. Beall checked off on her copy of the McAllister Inventory.
*See* Pl.'s Objs., ECF No. 68 at 2 (claiming that Mr. Cole "was
never provided certain responsive records that Ms. Beall located
during NIST's search for the McAl[l]ister inventory documents").
As Magistrate Judge Harvey noted in his Report and
Recommendation, the only document that Mr. Cole's declaration
identified as missing that corresponds to the McAllister
Inventory is the WTC Drawings numbered 8-11 through 8-18." R. &
R., ECF No. 67 at 6 n.12; *see also* Second Cole Decl., ECF No.
66-1 ¶ 2; Renewed Mot. for Summ. J.—Ex. 23 ("Beall's McAllister
Inventory"), ECF No. 56-3 at 120-21.

    Turning to this sole document left in dispute, the evidence
establishes that the document was produced to Mr. Cole. In
Defendants' response to Mr. Cole's objections, they state that
the drawings were located in an electronic file titled "LRG_FMT-
UNKNOWN-001_005.pdf," citing Ms. Beall's checked off McAlister
Inventory as corroborating evidence. *See* Defs.' Resp., ECF No.
69 at 4; Beall's McAllister Inventory, ECF No. 56-3 at 120. In
Ms. Fletcher's third declaration, she also corroborates this

_____

referenced in Mr. Cole's most recent declaration are currently
in dispute as missing.

statement and further offers that "FEMA has confirmed that it produced this file in full to Mr. Cole," citing two letters showing transmission of documents from Defendants to Mr. Cole in April and September 2016. *See* Third Decl. of Catherine S. Fletcher ("Third Fletcher Decl."), ECF No. 69-1 ¶¶ 14-15. As further evidence that Mr. Cole received the drawings, Defendants stated that the missing drawings were produced in the same electronic file with drawings that Mr. Cole admits he received. *See* Defs.' Resp., ECF No. 69 at 5; First Cole Decl., ECF No. 30-9 ¶ 3. Defendants conclude that "Plaintiff has received *complete* copies" of the missing document and that therefore "there is no legal or factual basis for [Mr. Cole's objection]." Defs.' Resp., ECF No. 69 at 5.

In his reply brief, Mr. Cole does not address any of Defendants' facts or arguments about the missing drawings. Rather, he reiterates that "[o]ne aspect of [his] cross motion for summary judgment was his claim that NIST via Ms. Beall had located certain responsive records such as certain drawings . . . but that neither NIST nor FEMA ever provided him those specific records." Pl.'s Reply, ECF No. 70 at 13-14. Mr. Cole then states that his "argument in his Objections on this point is incorporated here." *Id.* But his original objections do not refute or engage with any of Defendants' evidence showing that the drawings in question were in fact produced to Mr. Cole.

Therefore, Mr. Cole has conceded the argument. *See Am. Waterways Operators v. Regan*, 590 F. Supp. 3d 126, 138 (D.D.C. 2022) ("'If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.'" (quoting *Day v. D.C. Dep't of Consumer & Regul. Affs.*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002))).

Therefore, although Mr. Cole is correct that the Report and Recommendation neglected to consider his argument about missing documents as a violation of Defendants' disclosure requirements under FOIA, a *de novo* review of Mr. Cole's claim reveals that the only properly identified missing document—WTC drawings 8-11 through 8-18—were produced to Mr. Cole. Therefore, this claim does not entitle Mr. Cole to summary judgment, nor does it preclude the Court from granting summary judgment to Defendants.

**B. Mootness**

Magistrate Judge Harvey concluded that Mr. Cole's claims against NIST are moot because "Plaintiff already has the documents he asserts would necessarily have been included and disclosed in any adequate search." R. & R., ECF No. 67 at 26. Mr. Cole objects to this conclusion as well as "specific fact finding on which the Magistrate Judge appears to base his conclusion of mootness." Pl.'s Objs., ECF No. 68 at 4.

Primarily, Mr. Cole objects to the Report and Recommendation's finding "that Cole was provided all of the BPS

records that GMS transferred to NIST on January 28, 2003 rather than just the 34-page transmittal memo." *Id.* at 5. He claims that Ms. Fletcher's second declaration was "misread" by Magistrate Judge Harvey and that her declaration "states that Cole was given the 34-page transmittal letter from GMS to NIST but does not state that Cole was provided . . . the numerous and voluminous records referenced in that GMS transmittal letter." *Id.* In his reply brief, Mr. Cole reemphasizes his claim and states that Ms. Fletcher's third declaration "omits to state explicitly whether Mr. Cole was given the numerous videos, photos, and other BPS data records that are listed, identified, and referenced in the 34 pages that constitute NIST record WTCI-93-I (PEX 1)." Pl.'s Reply, ECF No. 70 at 7. Relatedly, Mr. Cole also accuses Defendants of purposefully misleading Magistrate Judge Harvey and failing to make "clear duty of candor disclosures on the material facts regarding the mootness issue." *Id.* at 10.

Reviewing Mr. Cole's arguments *de novo*, the Court concludes that his claims are clearly, directly, and repeatedly disputed by the evidence in the record. Mr. Cole's main assertion is that he was "provided only the 34-page transmittal letter from GMS" in reference to FOIA request 12-168, but he was not provided "the actual BPS records referenced therein which would have been responsive to Cole's FOIA request in the instant case." Pl.'s

27

Objs., ECF No. 68 at 6; *see also* Pl.'s Reply, ECF No. 70 at 7
("Cole makes no FOIA claim in this case regarding a failure by
Defendants to disclose or search for either the 34-page
transmittal documents identified as NIST record WTCI-93-I or the
larger set of supplemental records identified as NIST record
WTCI-134-I."). However, as Magistrate Judge Harvey noted,
"Fletcher's declaration is clear" that Mr. Cole was provided all
the records he sought. R. & R., ECF No. 67 at 24. Ms. Fletcher's
second declaration is explicit that the files at issue—record
number WTCI-93-I from FOIA request 12-168—"was closed on March
4, 2013" and "[a]ccording to [their] logs, the only withholdings
from this record were personal information withheld pursuant to
FOIA Exemption 6." Second Fletcher Decl., ECF No. 64-2 ¶¶ 12-13.
In her third declaration, Ms. Fletcher confirms this statement
and reiterates that "[a]ll the records requested relating to
WTCI-93-I were released, with only minor redactions of personal
information pursuant to FOIA Exemption 6." Third Fletcher Decl.,
ECF No. 69-1 ¶ 5. She then states that the 34 pages "produced to
Mr. Cole is the entirety of record WTCI-93-I" and that it
included "release forms and a catalog of GMS videos and
photographs containing World Trade Center images." *Id.* ¶¶ 6-7.
Ms. Fletcher also states that an "updated version" of the record
which included "additional *and replacement* materials" was
provided to Mr. Cole as record number WTCI-134-I, which included

over 1,300 released files. *Id.* ¶¶ 8-9 (emphasis added). She unambiguously concluded that "Mr. Cole has received all non-exempt documents which are part of records WTCI-93-I and WTCI-134-I." *Id.* ¶ 10. Therefore, Ms. Fletcher's declarations together establish that Mr. Cole was given all the documents related to the record at issue—WTCI-93-I—either in that document or in the supplemental WTCI-134-I document, which includes both additional and replacement materials.

Mr. Cole quibbles with the WTCI-143-I records, claiming that they relate to a "later supplemental records transfer, not the BPS records transferred on January 28, 2003 that *are* at issue." Pl.'s Reply, ECF No. 70 at 9. But Mr. Cole's unsupported assertion directly contradictions Ms. Fletcher's declaration and the text of WTCI-93-I itself. *See* Pl. David Cole's Am. Cross Mot. for Summ. J.—Ex. 1 ("WTCI-93-I Record"), ECF No. 61-4 at 1-2 (noting that WTCI-134-I is an "updated version" of record WTCI-93-I and stating that "additional materials *and some replacement CDs and disk*[s]" can be found in record WTCI-134-I). In his reply brief, Mr. Cole argues that the WTCI-143-I records were "intended to supplement not replace or duplicate the voluminous video and photographic records transferred to NIST by GMS [in the WTCI-93-I record]." Pl.'s Reply, ECF No. 70 at 4. For support, he quotes the transmittal letter for the WTCI-143-I records, which states that those records "are in addition to the

29

photographic and video materials previously sent [in record WTCI-93-I]." *Id.* (quoting Third Fletcher Decl.—Ex. C ("WTCI-134-I Record"), ECF No. 69-1 at 12). However, on the same page that Mr. Cole quotes, the transmittal letter states that some of the materials provided in WTCI-143-I "completely replaces" previous materials from the WTCI-93-I record with "additional and updated material." WTCI-134-I Record, ECF No. 69 at 12-13. Although Mr. Cole continues to claim that the WTCI-93-I records have not been produced, he points to no records from WTCI-93-I which were missing from the WTCI-143-I production. Rather, the evidence repeatedly and consistently establishes that the WTCI-93-I records were updated and subsequently replaced by the WTCI-143-I records, which Mr. Cole received in full.

As a separate attack on the Report and Recommendation's mootness conclusion, Mr. Cole argues that Magistrate Judge Harvey erred in concluding his claim against NIST is moot because Magistrate Judge Harvey failed to "address the separate allegation that NIST via Ms. Beall's search located responsive documents that were never produced to Cole" and that therefore "it is premature at best to conclude NIST has no liability regarding this particular failure to disclose." Pl.'s Objs., ECF No. 68 at 8. Since the Court determined in the previous section that Mr. Cole's claims of missing documents are not supported by

the evidence, this argument cannot be a basis for undermining Magistrate Judge Harvey's mootness conclusion.

For the reasons above, the Court agrees with the Report and Recommendation's conclusion that Mr. Cole's claim against NIST is moot since the he has already been provided the records he seeks.

### C. Adequacy of FEMA's Search

Mr. Cole challenges the Report and Recommendation's conclusion that FEMA's search was adequate on several grounds. First, Mr. Cole challenges whether "FEMA's search was even conducted in good faith." Pl.'s Objs., ECF No. 68 at 9. Second, he challenges two factual findings: "first regarding the scope of Cole's FOIA request," *id.*; and second, relating "to the extent contractor G&O did or did not have all of the FEMA BPS records, and the Magistrate Judge's reliance on Letvin and Bridges regarding that issue," *id.* at 10. Third, Mr. Cole argues that Defendants' search was not adequate because "no search was ever conducted of any FEMA computer, email system, electronic files, paper files, or backup files of any kind," *id.* at 11; and because FEMA failed to produce certain responsive documents, *see id.* at 12-14. Fourth, Mr. Cole objects to the Report and Recommendation's finding that certain "emails would not be expected to" reveal the documents he alleges Defendants have failed to produce. *Id.* at 15. Fifth, Mr. Cole objects to "the

Magistrate Judge's reliance on FEMA's consulting with BPS
Project Manager Tertell as a basis for concluding that FEMA's
search was in good faith." *Id.* at 17. And finally, he objects to
Magistrate Judge Harvey's "assertion . . . that Cole is being
speculative in asserting that FEMA's own records should have
been searched." *Id.* at 18. None of Mr. Cole's arguments have
merit.

First, on the issue of good faith, Mr. Cole argues that the
"history of FEMA's actions in this FOIA case is more consistent
with a bad faith effort to conceal responsive records than it is
with a good faith reasonable search for responsive records." *Id.*
at 16. He notes the delay in production, evidence of responsive
documents that were not released to him, and Defendant's
previously inconsistent statements as suggestive of bad faith.
*See id.* at 15-17. However, "[c]ourts routinely find that delays
in responding to FOIA requests are not, in and of themselves,
indicative of agency bad faith." *Skurow v. U.S. Dep't of
Homeland Sec.*, 892 F. Supp. 2d 319, 326 (D.D.C. 2012)
(collecting cases). Furthermore, as noted in the previous two
sections, Mr. Cole has failed to show that Defendants have
withheld any responsive documents and thus, Mr. Cole cannot use
this argument as evidence of bad faith.

Finally, although Mr. Cole tries to use "FEMA's course of
actions over a period of time" to suggest bad faith, *see* Pl.'s

Objs., ECF No. 68 at 11; *Magistrate Judge Harvey's* analysis
shows how FEMA has, on this motion for summary judgment,
clarified its actions and substantiated their reasonableness.
*See* R. & R., ECF No. 67 at 14-22. The Report and Recommendation
specifically noted the Defendants' changes in position over the
course of litigation and Mr. Cole's objections to them. *See* R. &
R., ECF No. 67 at 5-10. However, it ultimately concluded that
Mr. Cole failed to raise "substantial doubt" about the adequacy
of FEMA's search. *Id.* at 22. This Court agrees with Magistrate
Judge Harvey's conclusion because Mr. Cole has failed to produce
"tangible evidence of bad faith" required "to overcome agency
affidavits." *Schaerr v. U.S. Dep't of Justice*, 69 F.4th 924, 931
(D.C. Cir. 2023) (internal quotation marks omitted). Mr. Cole
has not provided any evidence to call into question Defendants'
clarifications and thus his assertions of bad faith are
unsubstantiated.

Second, turning to the factual issues, Mr. Cole argues that
Magistrate Judge Harvey erred in characterizing his FOIA request
because Mr. Cole "asked for all background and raw data
collected for the BPS (used for the study) whether or not such
material was used in the BPS study *report*." Pl.'s Objs., ECF No.
68 at 10. In the Report and Recommendation, Magistrate Judge
Harvey observed that Mr. Cole's FOIA request was for
"'background or raw data used for' the BPS produced by G&O,"

citing that undisputed fact from Defendants' Statement of Material Facts. *See* R. & R., ECF No. 67 at 15. Mr. Cole quotes this language in his brief, and then claims that he "did not limit his request to G&O record or to the McAlister Inventory records, neither of which were mentioned in his FOIA request." Pl.'s Objs., ECF No. 68 at 9. However, the Report and Recommendation never claimed that Mr. Cole limited his request in this way. It only quoted the language of the original FOIA request—a fact which Mr. Cole himself admitted. Therefore, Mr. Cole appears to be misinterpreting the factual finding of the Report and Recommendation. Accordingly, his objection is without merit.

Mr. Cole's second factual concern relates to "the extent contractor G&O did or did not have all of the FEMA BPS records." Pl.'s Objs., ECF No. 68 at 10. Mr. Cole claims that Magistrate Judge Harvey erroneously found that all records were transferred to NIST but Mr. Letvin's deposition testimony "clarified that he had not collected all, or any, of FEMA's staff's BPS materials, records to which he admitted he had no access, but only G&O materials and did not transfer all of even G&O's materials to NIST, only most of them." *Id.* However, Mr. Cole's allegations

distort the relevant facts and Magistrate Judge Harvey's analysis.

Mr. Cole quotes and objects to pages 15-17 of the Report and Recommendation, which detailed FEMA's and NIST's search for documents. *See* R. & R., ECF No. 67 at 15-17. For support of his allegations, Mr. Cole cites his own statement of material facts, which claims that "FEMA transferred *no* FEMA computer hard drives, FEMA emails, FEMA electronic backups, or FEMA paper records to NIST from FEMA's own personnel, but rather FEMA only directed the transfer of *contractor* records to NIST." Pl.'s SOMF, ECF No. 65-1 ¶ 10. However, the Report and Recommendation, in its discussion of the search, only discussed the search of "documents responsive to [Mr. Cole's] request." *See* R. & R., ECF No. 67 at 15. Regarding those documents, Mr. Letvin, an employee who was intimately involved in the transfer, stated that he was "very thorough" in fulfilling his role of collecting the relevant materials for transfer and that the transferred records were "comprehensive." *See* R. & R., ECF No. 67 at 17. Mr. Cole's objection rests on the assumption that some of the non-transferred materials were within the realm of materials responsive to his FOIA request, but he provides no evidence to substantiate his speculation.

Relatedly, Mr. Cole's third objection—that FEMA's search was inadequate because it failed to search its own "computer,

email system, electronic files, paper files, or backup files,"
Pl.'s Objs., ECF No. 68 at 11—is also without merit. Although
Mr. Cole tries to use missing documents to establish the
inadequacy of the search, the Report and Recommendation was
correct when it stated that "the adequacy of a FOIA search is
generally determined not by the fruits of the search, but by the
appropriateness of the methods used to carry out the search."
*See* R. & R., ECF No. 67 at 19 (quoting *Iturralde*, 315 F.3d at
315). Thus, Mr. Cole's assertion that the search was "knowingly
and blatantly defective in failing to search for and locate
[certain] BPS records," Pl.'s Objs., ECF No. 68 at 14; is
contrary to the well-established caselaw on an agency's search
obligations under FOIA.

Additionally, although Mr. Cole attacks Defendants'
decision to "limit[] [the] search to the task of locating
specific records listed on one specific inventory" as arbitrary,
Pl.'s Objs., ECF No. 68 at 13; the evidence undermines this
statement. As the Report and Recommendation explained, after the
BPS was complete, Mr. Letvin transferred all the "material used
for the BPS to NIST"—and the record of that transfer was the
McAllister Inventory. *See* R. & R., ECF No. 67 at 15. There is
nothing "arbitrary" about Defendants limiting their search to
these materials because those are the materials—"background or
raw data used for" the BPS—which Mr. Cole's FOIA request sought.

*See id.* Although Mr. Cole claims that "no FEMA staff records of any kind" were transferred to NIST, Pl.'s Objs., ECF No. 68 at 11; he fails to establish that those materials would have "likely" revealed *new* documents responsive to his FOIA request. *See Jud. Watch, Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 20 F. Supp. 3d 247, 254 (D.D.C. 2014) ("[T]he government is not required to search everywhere a document *might* be. Instead, it is only required to search those places where a document is *likely* to be."); *Mobley v. CIA*, 806 F.3d 568, 581 (D.C. Cir. 2016) (accepting agency's reasoning for not searching email records because "the records in them are redundant of records stored in [a system the agency already searched]"). Instead, his assertions suggest that the materials at best would have revealed duplicates of the documents already included in the McAllister Inventory. *See* Pl.'s Objs., ECF No. 68 at 12 (faulting FEMA for not searching "the computer or emails of FEMA's WTC BPS project manager Paul Tertell" because he "*was copied* by the BPS team members . . . via email and otherwise on numerous BPS records during the period he managed the BPS project" (emphasis added)).

Turning to Mr. Cole's related fourth argument—his objection to the Report and Recommendation's suggestion that the purportedly missing documents were unlikely to be in the FEMA staff's emails—the Court again sees no error in the Report and

Recommendation's reasoning. Mr. Cole argues that although the allegedly missing documents would have been large files, "the BPS team used its FTP (web) site to upload and download . . . such large files and . . . FEMA's participants on the BPS team . . . would have had access to this FTP site (and may have downloaded any such files to their own computers or printed them)." Pl.'s Objs., ECF No. 68 at 15. First, as noted above, any failure to uncover documents is not indicative of the adequacy of Defendants' search. *See Iturralde*, 315 F.3d at 315. Second, Mr. Cole's arguments about what FEMA team members "may have downloaded" is purely speculative and unsupported by any evidence. Thus, it is insufficient to establish that any allegedly missing records would have "likely" been hidden in the emails at issue. Finally, as Mr. Cole notes, the BPS team included both FEMA and G&O members, and all G&O materials related to the BPS were transferred to NIST and documented in the McAllister Inventory. *See* R. & R., ECF No. 67 at 14-15. Thus, at best, the emails may have uncovered the FEMA staff's duplicates of materials already within the G&O materials. Mr. Cole never asserts and points to no evidence that the FEMA emails—or other FEMA materials—would have produced new documents

that were not already among the set of documents in the McAllister Inventory.

In his fifth argument, Mr. Cole objects to the Report and Recommendation's "reliance on FEMA's consulting with BPS Project Manager Tertell as a basis for concluding that FEMA's search was in good faith." Pl.'s Objs., ECF No. 68 at 17. In substantiating this argument, Mr. Cole claims that "agency documents produced in discovery show that Tertell was likely consulted for a *different more limited* purpose than determining where to search and determining whether responsive records remained at FEMA." *Id.* at 18. However, Mr. Cole provides no support for his assertion. Mr. Cole next argues that Mr. Tertell "could not have advised FEMA in good faith that FEMA had retained no responsive records" because none of FEMA's staff records were transferred to NIST. *Id.* at 18. As noted in the Report and Recommendation, Mr. Tertell was one of "three subject matter experts" FEMA consulted with in regards to the FOIA request. *See* R. & R., ECF No. 67 at 16-17. Thus, even if Mr. Tertell was incorrect in initially asserting that FEMA retained no responsive records (even duplicates of records sent to NIST), the consultation with Mr. Tertell and the two other subject matter experts is still indicative of FEMA's good faith efforts to uncover responsive documents. *See Jud. Watch, Inc.*, 20 F. Supp. 3d at 254-55 ("[I]t is permissible for an agency to rely on subject matter experts

39

to conduct individualized searches for documents when responding
to FOIA requests."). Finally, Mr. Cole also faults Mr. Tertell
for not directing FEMA's search to the January 2003 records sent
from GMS to NIST. *Id.* at 18. But as Defendants note in their
response, "FEMA never acquired the GMS records, which were
obtained directly by NIST pursuant to a NIST purchase order for
NIST's own World Trade Center analysis." Defs.' Resp., ECF No.
69 at 8; *see also* WTCI-93-I Record, ECF No. 61-4 at 2 (stating
only that the transfer of materials was from GMS to NIST "with
FEMA's full permission"). Thus, Mr. Tertell's failure to point
to the GMS documents does not undermine FEMA's good faith since
no evidence establishes that the GMS documents were ever
possessed by FEMA, in contrast to the G&O documents which were
(at least jointly possessed by FEMA and G&O) and later
transferred to NIST.

Finally, Mr. Cole objects to the Report and
Recommendation's assertion "that Cole is being speculative in
asserting that FEMA's own records should have been searched."
Pl.'s Objs., ECF No. 68 at 18. He argues that "[t]here is
nothing speculative in the expectation that a federal agency's
project manager's files for a million-dollar project *might*
contain some project records." *Id.* (emphasis added). However, in
this statement, Mr. Cole again confuses the standard for an
adequate search. FEMA is not required to search any location

40

that "might" have responsive documents, but only where such
documents are "likely" to be found. *See Jud. Watch*, 20 F. Supp.
3d at 254. As the Report and Recommendation noted, not one of
the three subject matter experts suggested that FEMA's documents
were where responsive documents were "likely" to be found. *See*
R. & R., ECF No. 67 at 19. And Mr. Cole points to no additional
evidence to substantiate his claims otherwise. Although he
claims that the allegedly missing documents required further
searches by FEMA, as discussed above, the evidence in the record
does not support Mr. Cole's claims about missing documents.
Thus, the Court finds no error in the Report and Recommendation
on this point.

Overall, although Mr. Cole has launched many objections to
the Report and Recommendation's conclusion that FEMA's search
was adequate, the Court agrees with Magistrate Judge Harvey's
analysis of the evidence and agrees that FEMA's search was
adequate under the circumstances.

### D. FEMA's Failure to Search NARA

Mr. Cole objects to the "finding and conclusion" of the
Report and Recommendation that Defendant was not obligated to
search the 490,000 pages of WTC records sent to NARA "because
there was no reason to believe those records would contain
responsive records." Pl.'s Objs., ECF No. 68 at 19. However, Mr.

Cole fails to substantiate his argument with evidence, instead offering only conjecture.

First, Mr. Cole claims that "[o]ne explanation" for the Defendants' assertion that "Swiren BPS team emails and their attached documents and links to documents" were not in Region 2 is that they "ended up at NARA." *Id.* at 20. However, Mr. Cole fails to allege that any of these documents would have been both responsive to his FOIA request and different from the documents FEMA already found and produced. In fact, as with most of his other claims, Mr. Cole only states that "FEMA official Bruce Swiren worked at FEMA Region 2 and *was copied* on BPS team emails," *id.* (emphasis added); but never alleges—or supports with evidence—the required link that any of Mr. Swiren's correspondence or documents would have been new, responsive materials. Furthermore, Mr. Cole has no evidence for his assertion that the materials he seeks are at NARA other than his logic that the information "had to go somewhere." *See* Pl.'s Objs., ECF No. 68 at 20. This explanation is a far cry from showing that NARA is a "likely" location for such materials such that failing to search NARA renders Defendants' FOIA search inadequate. *See Jud. Watch*, 20 F. Supp. 3d at 254.

Mr. Cole alleges that "[i]f all justifiable inferences from [the] facts are drawn in favor of Mr. Cole" then the Report and Recommendation "erred in concluding as a matter of law that

FEMA's decisions not to search the NARA files and also to not
search the Region 2 files were consistent with FEMA's FOIA
obligations." Pl.'s Objs., ECF No. 68 at 21. His line of logic
appears to be that since "Mr. Swiren worked closely with [Mr.
Letvin] and Mr. Tertell in supervising the BPS team's work," Mr.
Swiren must have responsive documents that are located at either
Region 2 or NARA. *Id.* at 21.

But Mr. Cole's conjecture is undermined by the evidence. As
Magistrate Judge Harvey noted, "no subject matter expert
suggested that Region II documents held at NARA were a likely
location for responsive documents" and "Region II's subject
matter expert determined that his division did not have
responsive materials." R. & R., ECF No. 67 at 20. Furthermore,
in a letter response to Mr. Cole, FEMA specifically
distinguished the materials held at NARA, which were transferred
from FEMA's Region II office as "non-responsive, 'supplemental
WTC records,'" which could be the subject of a different FOIA
request if Mr. Cole sought one. *See* R. & R., ECF No. 67 at 21
(citing FEMA Letter, ECF No. 23-2 at 89). Thus, Mr. Cole's
inference that any responsive documents are located at NARA is
not supported by the evidence presented. Therefore, the Court
agrees with Magistrate Judge Harvey's conclusion that FEMA was

not obligated to search NARA to comply with its FOIA
obligations.

### E. Denial of Mr. Cole's Motion for Summary Judgment

Mr. Cole's final objection is to the Report and
Recommendation's conclusion that his Motion for Summary Judgment
be denied. *See* Pl.'s Objs., ECF No. 68 at 22. First, he argues
that such a conclusion is erroneous regarding the adequacy of
FEMA's search. *See id.* The Court has previously addressed this
argument in Section III.C and has concluded that Mr. Cole's
claims are without merit. Mr. Cole next argues that the
conclusion on mootness as to NIST is erroneous. *See* Pl.'s Objs.,
ECF No. 68 at 22. The Court addressed this argument in Section
III.B and concluded that it was also without merit.

Finally, Mr. Cole objects to Magistrate Judge Harvey's
conclusion that Defendants' failure to produce documents until
"forced by Plaintiff's litigation to do so" renders his claims
on this issue moot because Defendants did ultimately produce the
documents. *See* Pl.'s Objs., ECF No. 68 at 22. He argues that
"finding of mootness is unwarranted" because: (1) "there remain
agency documents known to exist and known to still be accessible
to FEMA and NIST (the GMS BPS documents transmitted to NIST with
FEMA's approval on January 28, 2003)," (2) "known-to-exist
responsive records such as the Steficek video remain
undisclosed," and (3) Defendants have a "history in addressing

Cole's FOIA request" with "numerous irregularities, delays, and misrepresentations (which suggest that the FOIA violations in the instant case were not merely inadvertent and could recur)." *Id.* at 23. All three of these arguments have been previously rejected in this opinion.

First, in Section III.C, the Court concluded that Mr. Cole has failed to establish that the GMS BPS documents were ever possessed by FEMA. Thus, FEMA cannot have violated FOIA by failing to produce documents it never possessed, much less retained. Furthermore, as discussed in Section III.B, the evidence establishes that the GMS documents were ultimately produced to Mr. Cole in a separate FOIA request. Thus, his claim regarding these records is moot and he is not entitled to summary judgment on this ground.

Second, as determined in Section III.A and III.B, Mr. Cole has failed to establish that any responsive records remain undisclosed. Mr. Cole's most recent declaration only identified three undisclosed documents and Ms. Beall's copy of the McAllister Inventory establishes that only one of those documents was located by Defendants. *See* Second Cole Decl., ECF No. 66-1 ¶ 2; Beall's McAllister Inventory, ECF No. 56-3 at 120. Furthermore, Defendants established, through specific evidence in the record, that this document was produced, *see* Defs.' Resp., ECF No. 69 at 4; Beall's McAllister Inventory, ECF No.

56-3 at 120; and Mr. Cole failed to rebut this argument in his reply brief, thus conceding it.

Third, although Mr. Cole has pointed to the "irregularities, delays, and misrepresentations" in the history of this case multiple times. He has failed to show that such incidents have infected the instant motions for summary judgment and he has also failed to supply this Court with any "tangible evidence" establishing bad faith on the Defendants' part. *See Schaerr*, 69 F.4th at 931. Furthermore, Mr. Cole fails to explain how any FOIA violations could "recur." He does not allege that he has any additional FOIA requests pending with the identified agencies, in fact, as discussed in Section III.B, the record establishes that Mr. Cole's other FOIA requests have been fulfilled in full.

Therefore, the Court agrees with Magistrate Judge Harvey's conclusion that Mr. Cole's Motion for Summary Judgment should be denied.

## IV.   Conclusion

For the foregoing reasons, Magistrate Judge Harvey's Report and Recommendation, *see* ECF No. 67, is **ADOPTED IN FULL**. The Court also supplements the Report and Recommendation with its own conclusion regarding Mr. Cole's argument about Defendants' disclosure obligations related to the allegedly missing documents and concludes that argument is without merit.

46

Therefore, Defendant FEMA's Motion for Summary Judgment, *see* ECF No. 56 is **GRANTED**; Mr. Cole's claim against NIST is dismissed as **MOOT**; and Mr. Cole's Cross Motion for Summary Judgment, *see* ECF No. 61, is **DENIED**.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**


**Signed:**    **Emmet G. Sullivan**
           **United States District Judge**
           **July 22, 2024**